In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1502

Central States, Southeast and Southwest
Areas Pension Fund, and Howard McDougall,
trustee,

Plaintiffs-Appellants,

v.

Reimer Express World Corporation,
a Canadian corporation, and Reimer Express
Enterprises Limited, a Canadian corporation,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2524--James B. Moran, Judge.

Argued September 13, 2000--Decided October 18, 2000

Before Flaum, Chief Judge, and Bauer and Kanne,
Circuit Judges.

Flaum, Chief Judge.  Central States, Southeast
and Southwest Areas Pension Fund, and its trustee
Howard McDougall (collectively, the "Fund")
appeal the dismissal of their suit and the denial
of their motion to conduct discovery against
Reimer Express Enterprises, Limited ("REE"), and
Reimer Express World Corporation ("REWCOR"). The
Fund challenges the district court's
determinations that personal jurisdiction over
the defendants, two Canadian companies, was
lacking and that discovery on this issue was
unnecessary. For the reasons stated herein, we
affirm.

I.  Background

REE is a Canadian holding company corporation
with its principal place of business in Winnipeg,
Manitoba, Canada. In January 1986, REE owned all
the stock of a Canadian corporation named 141622
Canada, Inc., when this corporation purchased all
the common stock of another Canadian company,
140593 Canada, Inc. The record does not reveal
where this acquisition took place, but the
district court concluded that the transaction

occurred in Canada. 140593 Canada, Inc. owned all the stock of Inter-City Truck Lines, Inc. ("ICTL"). Thus, from January 1986 until February 1994 when REE sold 141622 Canada, Inc., REE was the corporate "great-grandparent" of ICTL. REWCOR, which was formed as a Canadian corporation on November 29, 1993, is a wholly owned subsidiary of REE.

ICTL was a Canadian corporation with its principal place of business in Canada that also operated a United States trucking enterprise out of Detroit, Michigan. ICTL engaged in extensive business in the United States and participated in the Fund. Under collective bargaining agreements between ICTL and Local 299 of the International Brotherhood of Teamsters, ICTL was obligated to contribute to the Fund on behalf of ICTL's employees. The Fund is a multiemployer pension plan within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. sec.sec. 1002(37), 1301(a)(3), and is administered from Rosemont, Illinois.

ICTL contributed to the Fund under a collective bargaining agreement covering April 1, 1988 through March 31, 1991. From the beginning of this period until March 1990, the Fund sent bills to ICTL's address in Detroit. In March 1990, ICTL requested that its billing address be changed to a street address in Winnipeg, Manitoba, which was not the address of the registered office of REE. In January 1991, ICTL asked that the Fund change its address to a post office box, which also was located in Winnipeg.

On November 13, 1991, the Fund received via fax a document titled "Fringe Benefit Agreement" whose cover page was on REE's letterhead. This agreement extended ICTL's obligation to contribute to the Fund on the terms provided by a national collective bargaining agreement. It was signed by J.D. Cockburn, whose title was described on the document as Manager of Human Resources and Industrial Relations of REE and whose address was that of REE. The fax legend named the sender of the document as "REE/ICTL."

In November 1992, the Fund received a fax from Linda Messel, whose position was listed as "ICTL (Payroll)." The letterhead of the fax cover page read "Reimer Express Enterprises Ltd., Administration Centre, Winnipeg." The attachments to this fax related to ICTL's obligation to remit contributions to the Fund. Prior to this fax, the Fund had received a fax from the same person with a cover page reading "Reimer Express Lines," which was a subsidiary of REE at the time.

In May 1993, ICTL went out of business and

ceased to have an obligation to contribute to the Fund. This constituted a withdrawal under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") to ERISA. 29 U.S.C. sec. 1383. Under MPPAA, an employer that withdraws from a pension plan incurs withdrawal liability. 29 U.S.C. sec. 1381. Businesses under common control are jointly and severally liable for the withdrawal liability of any affiliate./1 29 U.S.C. sec. 1301(b)(1).

The Fund assessed ICTL's withdrawal liability to be $310,922.12. The Fund prevailed in a suit against ICTL for this amount plus interest, but this judgment has not been satisfied. After determining that REE and REWCOR were affiliated with ICTL, on June 23, 1994, the Fund sent a notice demanding payment of ICTL's withdrawal liability plus interest. The defendants asked for a review of the Fund's determination, which was denied by the Fund on November 1, 1994. The Canadian companies have refused to pay the withdrawal liability.

The Fund filed the current action in federal district court in Illinois and served process on REE and REWCOR in Canada. The defendants filed a motion seeking to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). As part of that motion, the defendants submitted the affidavit of W.A. Redekopp, the general counsel of REWCOR. Redekopp said that REE, REWCOR and its subsidiaries such as ICTL have observed all corporate formalities, and that neither defendant exercised day-to-day management control of ICTL, 141622 Canada, Inc., or 140593 Canada, Inc. Redekopp also stated that REE or REWCOR have not done any business, have not had an office or telephone number, or owned or leased any property in Illinois or anywhere in the United States.

Accompanying the defendants' reply brief was an affidavit from James D. Cockburn and a second affidavit from Redekopp. Cockburn stated that in 1991 he was employed by REE and served as a consultant to REE's operating subsidiaries on labor matters. REE charged its subsidiaries a fee for the use of Cockburn's services. Cockburn further averred that prior to executing the aforementioned fringe benefit agreement, he discussed the matter with Hugh Richardson, then president of ICTL, who orally authorized Cockburn to sign the document on behalf of ICTL. Thus, Cockburn claims that he was serving as an agent of ICTL and not REE when he signed the agreement. Redekopp stated that REE provided administrative services to its subsidiaries in return for fees. Redekopp explained that Messel was employed by REE and, at the request and direction of ICTL management, provided payroll services to ICTL, which was charged by REE for these services. He

also claimed that none of these REE employees were involved in the day-to-day management of the subsidiaries.

The trial judge granted the defendants' motion to dismiss because personal jurisdiction was absent, without ruling on the other grounds for dismissal./2 The court stated that corporate ownership generally is not a sufficient basis for personal jurisdiction. Likewise, the provision of administrative services by a parent for a subsidiary does not trigger personal jurisdiction over the parent. The Fund had not alleged that REE and REWCOR were the alter egos of ICTL, controlled ICTL to the degree necessary to pierce the corporate veil, or exerted substantial control over ICTL's day-to-day activities. The court also denied the Fund's request for discovery, finding that the activities plaintiffs wished to investigate were attributable only to ICTL and were not related to the ERISA cause of action. The Fund timely appealed.

II. Discussion
A. Personal Jurisdiction

The Fund argues that the district court had specific personal jurisdiction/3 over the defendants based on their contacts either with Illinois or with the United States as a whole. It claims that the standard rule that corporate ownership cannot confer jurisdiction over the parent does not apply in the context of a statutory scheme that premises liability on such affiliation. The Fund also asserts that REE and REWCOR had enough other contacts with either Illinois or the United States to be subject to jurisdiction by the district court.

Dismissals for lack of personal jurisdiction are reviewed de novo. See Logan Productions, Inc. v. Optibase, Inc., 103 F.3d 49, 52 (7th Cir. 1996). The plaintiff bears the burden of demonstrating personal jurisdiction. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). We first determine whether there are federal or state statutory grounds for personal jurisdiction, then see whether the state constitution bars such jurisdiction if it is based on a state statute, and finally determine if the exercise of jurisdiction over the defendant would be consistent with the federal Constitution.

1. Statutory basis.

The Fund served process on REE and REWCOR in Canada. Service is sufficient to establish

personal jurisdiction if the defendant could be subject to jurisdiction in courts of the state where the district court is located. Fed.R.Civ.P. 4(k)(1)(A). If no state could exercise jurisdiction, then service will establish personal jurisdiction for claims arising under federal law if the exercise of jurisdiction is consistent with the Constitution and laws of the United States. Fed.R.Civ.P. 4(k)(2). The Fund argues that the district court has personal jurisdiction over REE and REWCOR under either the Illinois long-arm statute or, if Illinois cannot assert jurisdiction, Federal Rule of Civil Procedure 4(k)(2) since the MPPAA is a federal statute and no other state could exercise jurisdiction.

a) Illinois long-arm.

The Illinois long-arm statute permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions. 735 Ill.Comp.Stat. 5/2-209(c). Thus, we next turn to the Illinois constitution. The Illinois constitution's guarantee of due process are not necessarily the same as those provided by the federal Constitution, see Rollins v. Ellwood, 565 N.E.2d 1302, 1316 (Ill. 1990), but Illinois case law does not elucidate any differences regarding the instant personal jurisdiction question. See RAR, 107 F.3d at 1276. Illinois courts exercise jurisdiction over parents based on the activities of the subsidiary where the corporate veil can be pierced, or perhaps where all the corporate formalities are observed but the subsidiary's only purpose is to conduct the business of the parent. See IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537, 541 (7th Cir. 1998). However, whether corporate ownership alone or coupled with some administrative activities by the parent on behalf of the subsidiary is sufficient for jurisdiction under the Illinois constitution is unclear. See id. In any case, the defendants do not argue that state constitutional law prohibits the exercise of jurisdiction, and so we assume arguendo that personal jurisdiction here would not violate the Illinois constitution. See RAR, 107 F.3d at 1277 (finding Illinois constitutional law unclear on the question of personal jurisdiction and so moving to next step of analyzing federal constitutional law). Thus, neither the state statute nor constitution prohibits personal jurisdiction, and so we must determine whether jurisdiction comports with the federal Constitution.

b) Federal Rule of Civil Procedure 4(k)(2).

The Fund argues that if Illinois courts cannot exercise personal jurisdiction over REE and REWCOR, then jurisdiction is proper under Rule 4(k)(2) because it served process on the defendants. Four conditions must be present for Rule 4(k)(2) to apply: (1) the plaintiff's claims must be based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction must be consistent with the laws of the United States; and (4) the exercise of jurisdiction must be consistent with the Constitution. The Fund is suing under MPPAA so the first condition is met. The defendants do not argue that jurisdiction is proper in some state besides Illinois, so we may assume that if jurisdiction is not proper in Illinois that it is not proper in any state. Whether personal jurisdiction in these circumstances would be constitutional is addressed below; in this subsection we address whether such jurisdiction would be consistent with the laws of the United States.

REE and REWCOR claim that the exercise of jurisdiction would be inconsistent with ERISA and MPPAA's service of process sections,/4 and buttress their argument with a citation to United Elec., Radio and Mach. Workers of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1086 (1st Cir. 1992). We have previously held that the RICO statute, whose service of process provision, 18 U.S.C. sec. 1965(d),/5 is similar to those of ERISA, does not authorize worldwide service of process. See Stauffacher v. Bennett, 969 F.2d 455, 460-61 (7th Cir. 1992). However, both of these cases were decided under old Fed.R.Civ.P. 4(f) (repealed 1993) which stated that all process (besides a subpoena) could be served beyond the territorial limits of the state in which the districts courts sits "when authorized by a statute of the United States or by these rules." (emphasis added)./6 The word "authorized" indicates that some affirmative expression from Congress through a statute was necessary before process could be served extraterritorially. See generally Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 108-111 (1987). The RICO and ERISA service of process provisions state that service may be made in "any district," which indicates that Congress authorized service only in the judicial districts of the United States and not worldwide. In comparison, Congress authorized worldwide service in laws stating that service could be made "wherever the defendant may be found," or similar language, which is not limited to the judicial districts of the United States. See Robinson Eng'g Co. Pension Plan and Trust v. George, 223 F.3d 445, 449 (7th Cir. 2000).

We find that Rule 4(k)(2), which was enacted after United Workers and Stauffacher, permits jurisdiction to be exercised by the service of process even if a statute does not specifically state that service is proper, as long as the Rule's conditions are satisfied and no other statute prohibits jurisdiction or indicates that jurisdiction would be improper. Three reasons support this conclusion, two based on principles of statutory interpretation and the third grounded in the purposes of Congress in enacting Rule 4(k)(2).

First, Rule 4(k)(2) provides that for claims arising under federal law where no state could exercise jurisdiction, service of process is sufficient to establish personal jurisdiction if "consistent with the Constitution and laws of the United States." (emphasis added). Different words in a statute, in this case "authorized" and "consistent," should be given different meanings unless the context indicates otherwise. See, e.g., Bailey v. United States, 516 U.S. 137, 143 (1995). Similarly, we give statutory words their ordinary meaning absent some indication that Congress intended these to have a different import. See, e.g., Williams v. Taylor, ___ U.S. ___, 120 S. Ct. 1479, 1488 (2000). Unlike "authorized," whose meaning is described above, use of the word "consistent" in Fed.R.Civ.P. 4(k)(2) does not require that a statute explicitly permit worldwide service of process for service to be proper. A law of the United States and the act of exercising jurisdiction are consistent unless exercising jurisdiction contradicts, conflicts with, or is in opposition to a law. Thus, if a statutory provision permits nationwide service but is silent with respect to worldwide service, then worldwide service is "consistent" with this statute, since such service does not contradict or oppose the statutory language. Rule 4(k)(2), if its other requirements are met, more or less reverses the presumption of old Rule 4(f). Under the old rule, service could not be made internationally unless expressly permitted by federal statute; under the new rule, again when its other requirements are satisfied, service may be made internationally unless doing so would contradict or be in tension with another federal statute.

Second, current Rule 4(k)(1)(D) states that service of process is sufficient to establish personal jurisdiction "when authorized by a statute of the United States." Rule 4(k)(1)(D) provides for jurisdiction whenever a statute explicitly authorizes service of process. If establishing personal jurisdiction by serving process was considered inconsistent with a law which is silent on the issue, then Rule 4(k)(2)

would not have any effect. Under the defendants' argument, whenever a statute explicitly permits jurisdiction, Rule 4(k)(1)(D) would apply; if the statute did not explicitly permit jurisdiction, Rule 4(k)(2) could not apply. Rule 4(k)(2) would be meaningless, contradicting the interpretive principle that every word or provision of a statute must, if possible, be given some effect. See, e.g., Public Lands Council v. Babbitt, ___ U.S. ___, 120 S. Ct. 1815, 1826 (2000). Thus, jurisdiction can be exercised under Rule 4(k)(2) even where not explicitly provided for in another federal statute./7

Third, Rule 4(k)(2) was intended as a response to the Supreme Court's decision in Omni Capital, 484 U.S. 97. Fed.R.Civ.P. 4 advisory committee's note. Omni Capital, which was decided under old Fed.R.Civ.P. 4(f), involved a plaintiff who served process on a foreign defendant in an attempt to initiate an action under the Commodities Exchange Act ("CEA"), which was silent on the question of international service. The Supreme Court held that courts could not create their own rules for service of process, and thus the plaintiff's service was improper and the district court lacked personal jurisdiction over the defendants. 484 U.S. at 108-09. However, the Court suggested that "[a] narrowly tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable state long-arm statute, might well serve the ends of the CEA and other federal statutes." Id. at 111. Rule 4(k)(2) responds to this suggestion and is meant to permit international service of process where statutes are silent, like the CEA at the time of Omni Capital. This history of Rule 4(k)(2) further supports the interpretation that it provides a statutory basis for personal jurisdiction through service of process unless this contradicts or conflicts with another federal law.

Rule 4(k)(2) may be applicable to our case. Permitting personal jurisdiction through international service does not conflict with and is not in tension with the ERISA service of process provisions or any other federal statute that has been brought to our attention. Thus, three of the requirements for the use of Rule 4(k)(2), all except the constitutional issue, are satisfied if no state long-arm statute can be used. If Illinois cannot exercise jurisdiction over REE and REWCOR, Rule 4(k)(2) may provide a statutory basis for personal jurisdiction if there is no constitutional barrier.


2.  Constitutional basis.

The Fund has alleged two sufficient alternative statutory bases for obtaining personal jurisdiction over the defendants. The remaining question that must be answered is whether the exercise of such jurisdiction would be constitutional. We begin by analyzing the state long-arm statute and determining if Illinois could exercise personal jurisdiction over REE and REWCOR.

In order for personal jurisdiction to be proper, a defendant must have purposefully established minimum contacts with the forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985); RAR, 107 F.3d at 1277. The generalized foreseeability of the defendant's action causing harm in the forum is not sufficient for the exercise of jurisdiction. Burger King, 471 U.S. at 474. Instead, whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court there is the crucial inquiry. Id.; RAR, 107 F.3d at 1277. To establish such a reasonable anticipation the defendant must have purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws. Burger King, 471 U.S. at 474-75; RAR, 107 F.3d at 1277. Once minimum contacts have been shown to exist, a court must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant, to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice. Burger King, 471 U.S. at 476-77. In certain limited circumstances, these factors may show that a forum has such a strong interest in adjudicating a dispute that a lesser showing of minimum contacts than is normally the case may suffice for jurisdiction. Id. at 477. To exercise specific personal jurisdiction, the plaintiff's cause of action must arise out of or be related to these minimum contacts that sufficiently comport with fairness and justice. See Helicopteros, 466 U.S. at 414 & n.8; RAR, 107 F.3d at 1277.

a)  Corporate affiliation.

The Fund acknowledges the general rule that corporate ownership alone is not sufficient for personal jurisdiction. Nevertheless, the Fund claims that this principle does not apply in the context of withdrawal liability under MPPAA because 29 U.S.C. sec. 1301(b)(1) states that all businesses under common control shall be treated as a single entity. The Fund argues that because

this provision has been in effect since 1980, REE and REWCOR should have reasonably anticipated being subject to MPPAA liability in Illinois and the United States. The Fund concludes that because a district court in Illinois was able to assert personal jurisdiction over ICTL, Illinois can exercise such jurisdiction over the defendants.

While we have not squarely considered this issue before, we hold that constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary. Though we are mindful of the Supreme Court's admonition that "mechanical" tests generally should not be relied upon in determining when personal jurisdiction is constitutional, Burger King, 471 U.S. at 478, the Court itself has suggested this rule, see Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary."). We join other courts in finding that stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact. See, e.g., Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1273-74 (6th Cir. 1998); Miller v. Honda Motor Co., 779 F.2d 769, 771-72 (1st Cir. 1985); Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985); see also Shaffer v. Heitner, 433 U.S. 186, 216 (1977) (holding that ownership of shares in a corporation located in a particular forum is not purposeful availment of that forum); Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 336-37 (1925) (holding, though not on constitutional grounds, that jurisdiction over a subsidiary does not provide for jurisdiction over the parent where the two are separate entities).

A couple of reasons support this holding. First, where corporate formalities are substantially observed and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other. The Supreme Court, in a discussion of whether jurisdiction over the subsidiary can be leveraged into jurisdiction over the parent, has stated that "[e]ach defendant's contacts with the forum State must be assessed individually." Keeton, 465 U.S. at 781 n.13. The unilateral activity of an entity cannot subject a nonresident defendant to personal jurisdiction in the entity's forum. See Burger King, 471 U.S. at 474-75 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Where two corporations are in fact separate, permitting the

activities of the subsidiary to be used as a basis for personal jurisdiction over the parent violates this principle and thus due process. Second, the primary purpose of the corporate form is to prevent a company's owners, whether they are persons or other corporations, from being liable for the activities of the company. Where corporate formalities have been observed, a company's owners reasonably expect that they cannot be held liable for the faults of the company. Thus, such owners do not reasonably anticipate being hailed into a foreign forum to defend against liability for the errors of the corporation.

The Fund's argument that this analysis changes where a federal statute premises liability on corporate affiliation ignores the process by which courts determine whether specific personal jurisdiction exists and confuses liability and jurisdiction. To decide whether specific personal jurisdiction may be exercised, a court must engage in three distinct steps in the following order: (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit. If the court determines at the second step that a defendant does not have sufficient minimum contacts with the forum, then its personal jurisdiction analysis ends without examining the plaintiff's causes of action. The laws on which the suit are based would be irrelevant because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action, since this would violate due process. See AT & T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 590-91 (9th Cir. 1996). Similarly, jurisdiction and liability are two separate inquiries. See id.; Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1061 (1st Cir. 1982); Witt v. Scully, 539 F.2d 950, 951-52 (3d Cir. 1976). The fact that a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised. MPPAA's definition of corporate affiliation as an element of withdrawal liability cannot confer personal jurisdiction on the basis of such affiliation any more than a California cause of action's inclusion of a defective product as an element of liability can confer jurisdiction over a Japanese manufacturer whose defective product causes injury in California but who does not have

sufficient minimum contacts with that state. See Asahi Metal Indus. v. Superior Court of California, Solano County, 480 U.S. 102, 105-06, 112-13 (1987) (opinion of O'Connor, J.). In many circumstances, the conduct of a foreign defendant may satisfy the elements of liability contained in a statute, but this defendant will escape judgment because personal jurisdiction is lacking. Thus, MPPAA's control group provision regarding withdrawal liability does not alter the rule that corporate affiliation or ownership is not a sufficient minimum contact for the exercise of personal jurisdiction./8

Applying our above holding to this case, corporate affiliation cannot serve as a basis for personal jurisdiction over REE or REWCOR. ICTL conducted business as a corporate entity distinct from REE and REWCOR. ICTL maintained separate books, records, financial statements, and tax returns, as well as observing all corporate formalities. Neither REE nor REWCOR exercised day-to-day management control over ICTL. The Fund does not claim that REE or REWCOR were mere alter egos of ICTL, or that the two defendants exercised an abnormal degree of control over ICTL. The Fund does claim that a fax cover page's indication that it was sent by "REE/ICTL" suggests an erosion of corporate distinctions. However, a more obvious interpretation is that REE was sending the fax on behalf of ICTL, whose jurisdictional significance is discussed below. In any case, a mere fax legend is insufficient to show either that corporate formalities were not substantially observed or that REE controlled ICTL to an unusually high degree. Thus, the facts of this case do not demonstrate that REE or REWCOR can be subjected to personal jurisdiction on the basis of their affiliation with ICTL.

At this point in our analysis, we affirm the dismissal of defendant REWCOR. The only contact REWCOR has with either Illinois or the United States was affiliation with ICTL. REWCOR was not a parent of ICTL and apparently did not exercise any control whatsoever over ICTL, much less the domination necessary for us to find personal jurisdiction over a parent based on the actions of the subsidiary. Thus, regardless of whether the Illinois long-arm statute or Fed.R.Civ.P 4(k)(2) provides the statutory basis for jurisdiction, REWCOR lacks sufficient minimum contacts with either forum.

b) Other contacts.

The Fund claims that REE has other contacts with Illinois and the United States that are sufficient for the exercise of jurisdiction.

These contacts include the correspondence the Fund received with REE's letterhead on the fax cover pages and the fringe benefit agreement that was signed by an REE employee.

We adopt the rule that a corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction. See, e.g., Dunn v. A/S Em. Z. Svitzer, 885 F. Supp. 980, 988-89 (S.D. Tex. 1995); Calvert v. Huckins, 875 F. Supp. 674, 678-79 (E.D. Cal. 1995). The basis for this proposition is much the same as for the more general principle that jurisdiction over a parent cannot be based merely on jurisdiction over a subsidiary. Parent corporations regularly provide certain services to their subsidiaries. Such parents do not expect that performing these activities may subject them to liability because of the actions of the subsidiaries. Thus, such standard services are not sufficient minimum contacts to support the exercise of jurisdiction.

The fringe benefit agreement extended ICTL's obligation to contribute to the Fund. This contract did not impose any obligation on or otherwise involve REE. Cockburn, an employee of REE, did sign the agreement. However, the uncontroverted affidavit of Cockburn explains that he serves as a consultant to REE's subsidiaries, and that the subsidiaries pay REE for his services./9 He states that he signed the fringe benefit agreement on behalf of ICTL at the direction of Hugh Richardson, who was the president of ICTL. When the parent receives compensation for the subsidiary's use of the services of an employee of the parent, the employee acts on behalf of the subsidiary and not the parent, and the employee acts at the direction of the subsidiary's officers, the parent, at most, provides standard administrative services to the subsidiary. Thus, the fringe benefit agreement is not a sufficient minimum contact.

The other contacts alleged by the Fund fail for similar reasons. Messel was an employee of REE, but provided payroll services for ITCL at the direction of ITCL, who paid REE for her services. Her use of REE letterhead when she sent faxes to the Fund does not change the fact that she provided standard administrative services. Similarly, ICTL asking the Fund to change its billing address to Winnipeg, Manitoba shows, at most, that REE was providing payroll services. None of these activities constitute a sufficient minimum contact. Thus, we conclude that Illinois could not constitutionally exercise jurisdiction

on the basis of these administrative services that REE provided to ICTL.

As discussed above, if Illinois could not exert personal jurisdiction, the Fund could take advantage of Fed.R. Civ.P. 4(k)(2), under which we analyze all of REE's contacts with the United States./10 However, the Fund has not brought to our attention any contacts that REE itself had with the United States other than those with Illinois. Whatever business ICTL may have done throughout the United States is irrelevant since this cannot be a basis for jurisdiction over ICTL's parent REE, a separate corporate entity. Therefore, Fed.R.Civ.P. 4(k)(2) does not aid the Fund. None of the contacts alleged by the Fund would permit either Illinois or the United States to exercise specific personal jurisdiction over REE consistent with due process.

B.  Discovery

The Fund claims that the district court should have permitted discovery concerning whether personal jurisdiction over REE and REWCOR would be proper. At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted. See Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 312 (S.D. Ind. 1997). Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists. See Jazini v. Nissan Motor Co., 148 F.3d 181, 185-86 (2d Cir. 1998). We review the district court's denial of discovery on this issue for abuse of discretion. See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C., 148 F.3d 1080, 1089 (D.C. Cir. 1998); Noonan v. Winston Co., 135 F.3d 85, 94 (1st Cir. 1998).

We conclude that the district court did not abuse its discretion in denying the Fund's request for discovery into whether REE and REWCOR are subject to the personal jurisdiction of the court. Almost all of the Fund's evidence showed only that REE and REWCOR were affiliated with ICTL, without any showing that the defendants exercised an unusually high degree of control over ICTL or that corporate formalities were not substantially observed, or that REE provided standard administrative services to ICTL. None of this is sufficient to show a colorable basis for jurisdiction. Further, even if the fax cover legend naming "REE/ICTL" as the sender suggested a lack of corporate formalities sufficient to support a colorable showing of personal jurisdiction, granting the Fund's broad interrogatories and document requests would have been inappropriate for two reasons, both noted by

the district court. First, most of these requests were irrelevant to the issue of specific personal jurisdiction. For example, such demands as that REE and REWCOR produce all documents sent to any United States federal or state agency from 1986 to 1993, produce all documents sent to any United States based entity, and identify all of their shareholders in the United States, even if they might aid in establishing that the defendants had minimum contacts with the United States, would not establish any contacts arising out of or relating to the defendants' responsibility under MPPAA for ICTL's withdrawal liability. Second, imposing such burdensome, wide-ranging discovery against defendants from a foreign nation is not appropriate at a stage where the district court is trying to determine whether it has any power over the defendants. While perhaps the district court might have decided to permit more narrowly targeted discovery against REE and REWCOR, we do not find that its refusal to do so constitutes an abuse of discretion.

III.  Conclusion

Corporate affiliation with and the provision of standard administrative services to ICTL are not sufficient minimum contacts to exercise specific personal jurisdiction over REE and REWCOR. The trial judge did not abuse his discretion in denying the Fund's discovery requests because of the burden these would have imposed on the foreign defendants and, in many cases, their irrelevance to the specific personal jurisdiction issue. Therefore, the judgment of the district court is Affirmed.

/1 A fuller account of withdrawal liability under ERISA and the MPPAA can be found in Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc., 181 F.3d 799, 803-04 (7th Cir. 1999).

/2 Though subject-matter jurisdiction generally should be considered before personal jurisdiction, a district court may dismiss for lack of personal jurisdiction without determining whether subject-matter jurisdiction exists. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578, 587-88 (1999). Since we have the benefit of the lower court's reasoning regarding personal jurisdiction but not subject-matter jurisdiction, we follow its lead and discuss personal jurisdiction first.

/3 The Fund concedes that its evidence is insufficient to show the systematic and continuous contacts necessary to subject the defendants to general personal jurisdiction. See

generally Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984).

/4 These two provisions are 29 U.S.C. sec. 1132(e)(2) ("[P]rocess may be served in any other district where a defendant resides or may be found."), which is the general provision, and 29 U.S.C. sec. 1451(d) ("[P]rocess may be served in any district where a defendant resides, does business, or may be found."), which applies only to actions involving multiemployer plans such as the Fund.

/5 "All other process . . . may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."

/6 As explained hereafter, the substance of this old Rule 4(f) has been recodified in current Rule 4(k)(1)(D).

/7 Note that this interpretation of Rule 4(k)(2) does not render Rule 4(k)(1)(D) superfluous. Rule 4(k)(1)(D) has an independent effect whenever a federal statute authorizes service of process but a state could exercise jurisdiction. For example, under ERISA, if process is properly served on defendants within the United States, those defendants can be required to litigate in the district where the plan is administered, even if they have no contacts with that state. See Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031, 1037 (7th Cir. 2000). In such cases, Rule 4(k)(1)(D) provides the statutory basis for jurisdiction because the defendants would be subject to the jurisdiction of the state in which they are found, and so Rule 4(k)(2) would not apply.

/8 Our decision on this issue is consistent with the Ninth Circuit's analogous determination in AT&T, 94 F.3d 586. In that case, the plaintiffs argued that a parent corporation was an "operator" of a subsidiary that had incurred CERCLA liability because of its stock ownership and control of the subsidiary. Id. at 588. (AT&T predated the decision in United States v. Bestfoods, 524 U.S. 51, 61-62 (1998) which held that CERCLA liability cannot be imposed on a parent because of its ownership of a polluting subsidiary unless the corporate veil can be pierced.) Because the parent corporation would be liable due to the affiliation, the court could exercise personal jurisdiction over the parent. The Ninth Circuit rejected this argument and held that even if the defendants would be liable under CERCLA, the defendant's ownership of the subsidiary alone was not sufficient for personal jurisdiction and Congress could not alter this. 94 F.3d at 590-91.

/9 The Fund forfeited any objection to the introduction of Cockburn's affidavit, which was submitted with the defendants' reply memorandum to the motion for dismissal, by failing to raise it during the five-and-a-half month period after the motion was fully briefed and before the district court ruled. See Dugan v. Smerwick Sewerage Co., 142 F.3d 398, 406 (7th Cir. 1998).

/10 Where a federal statutory basis for jurisdiction exists, then we analyze whether the defendant has sufficient minimum contacts with the United States as a whole to determine whether personal jurisdiction is constitutional under the Due Process Clause of the Fifth Amendment. See Elite Erectors, 212 F.3d at 1035-36.