# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3270

INTERNATIONAL MEDICAL GROUP,
INCORPORATED, an Indiana Corporation,
and SIRIUS INTERNATIONAL INSURANCE
CORPORATION, a foreign corporation,

*Plaintiffs-Appellants*,

*v.*

AMERICAN ARBITRATION ASSOCIATION,
INCORPORATED, JANELLA BROWN, JOHN
GERMANI, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 C 1020—**Sarah Evans Barker**, *Judge*.

ARGUED APRIL 15, 2002—DECIDED DECEMBER 3, 2002

Before ROVNER, DIANE P. WOOD and EVANS, *Circuit Judges*.

ROVNER, *Circuit Judge*. International Medical Group, Inc. ("IMG") and Sirius International Insurance Corporation ("Sirius") were so displeased at being drawn into an arbitration proceeding that they sued not only the claimant who drew them in but his lawyers, their law firm, the

American Arbitration Association ("AAA") and a few hapless employees of the AAA. After this Indiana state court proceeding was removed to federal court, the district court dismissed the complaint, in part for lack of personal jurisdiction over most of the defendants and in part because of arbitral immunity, failure to state a claim upon which relief can be granted, and because AAA had been improperly joined. IMG and Sirius appeal and we affirm.

## I.

Michael Ogdon, a citizen of Great Britain and resident of Florida, purchased a health insurance policy from Sirius in late 1998. Sirius, a Swedish corporation, designated IMG, an Indiana company, as the policy administrator and general underwriter. In January 1999, Ogdon received emergency medical treatment at a Florida hospital and subsequently submitted bills totaling approximately $10,000 to IMG as plan administrator. IMG investigated the claim and refused to pay any of the bills on the ground that all of the charges related to a pre-existing condition that was not covered by the policy. Ogdon filed a complaint with the Indiana Department of Insurance, alleging that his illness was not a pre-existing condition at the time the policy was issued and that denial of his claim was improper, pretextual and in bad faith. The record does not reveal how or whether the Indiana Department of Insurance resolved that claim, but eventually Ogdon requested cancellation of the policy and a return of his premium. IMG obliged by cancelling the policy as of February 25, 2000 and returning a pro rata share of the premium Ogdon had paid for the policy.

In the meantime, Ogdon, through his attorneys (Hilda Piloto and Juan Rodriguez of the firm Rodriguez & Machado, P.A.) filed a Statement of Claim and a Demand

for Arbitration ("Demand") with the AAA in Miami, Florida. The insurance policy provided that certain disputes under the policy would be subject to arbitration:

> If any dispute shall arise as to the amount to be paid under this insurance (liability being otherwise admitted), such dispute shall be referred to arbitration in accordance with procedures of the American Arbitration Association. Where any dispute is by this provision referred to arbitration, the making of an award shall be a condition precedent to any right of action against the Company.

R.1, Complaint, Ex. B, ¶ 16. The Demand named both IMG and Sirius as respondents. According to the Demand, Ogdon purchased insurance from Sirius, and IMG was the plan administrator. The Demand stated that IMG and Sirius had wrongfully refused to pay out Ogdon's claim. The AAA assigned Janella Brown as the case manager. Brown worked in the AAA's Southwest Case Management Center in Atlanta, Georgia, a facility that administered arbitrations that take place in Miami, Florida. On March 17, 2000, Brown sent a letter to Thomas Dawson, a New York lawyer that Ogdon had identified as the representative for IMG and Sirius. The letter informed Dawson that Ogdon had made a demand for arbitration, and set out preliminary procedural matters. R. 1, Complaint, Ex. H.

Dawson forwarded the letter to F. Jonathon Zusy, the general counsel for IMG located in Indiana. Zusy responded to Brown's letter on behalf of both IMG and Sirius, denying that the arbitration was authorized by the insurance contract and declining to provide any of the information requested by the AAA. He explained that the contract provided for arbitration only if liability had been admitted, and that IMG and Sirius had never admitted liability. Zusy objected to an arbitration being held in Florida or anyplace else and asked the AAA to

cancel the arbitration. R. 1, Complaint, Ex. I. Brown replied by a letter addressed to Ogdon's lawyers and Dawson.[1] She requested that Ogdon respond to Zusy's letter by April 4, 2000. R. 1, Complaint, Ex. J. When Ogdon did not respond, Brown sent a letter to both Ogdon's counsel and Zusy stating that Ogdon had met the filing requirements of

---

[1] Dawson again forwarded the letter to Zusy. Zusy then sent Brown a sharp reply, telling her that he was counsel for IMG, that IMG was neither a party nor a respondent and warning Brown and the AAA that IMG reserved its right to seek damages against them if they persisted with the arbitration. He complained that Brown's "unilateral" decision to continue involving Dawson was causing IMG damages through the incurring of unnecessary attorneys' fees. R. 1, Complaint, Ex. K. Zusy's letter is curious because Dawson is named in the insurance policy as Sirius's designated agent for accepting service of process for any dispute arising out of the insurance contract. Because Sirius was named as a respondent in Ogdon's Demand, it was entirely appropriate for Brown to send a copy of any correspondence to the designated agent unless and until Sirius notified the AAA of any change in its representation. Although Zusy's original letter to the AAA purported to respond on behalf of both IMG and Sirius, Zusy identified himself only as general counsel for IMG and gave no indication that the original letter had been misdirected. Indeed, in the second letter, he identified himself solely as IMG's general counsel, which might lead a reasonable person to believe that Dawson still represented Sirius or that Sirius was now unrepresented. Moreover, if Dawson was not IMG's attorney, it is difficult to understand how IMG would have been liable for "unnecessary attorneys' fees." Presumably Sirius, having named Dawson as its designated agent, would have been liable for any attorneys' fees incurred in the arbitration. Nonetheless, Zusy insisted that all future correspondence "to IMG" be directed to him and to no other person. The AAA thereafter sent all of its correspondence directly to Zusy alone, presumably on the theory that he was also representing Sirius. We detail this strange correspondence from Zusy only because it becomes relevant later to questions of personal jurisdiction.

the AAA's rules and therefore the AAA intended to go forward with the arbitration:

> Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with further administration. The parties may wish to raise this issue with the arbitrator at or prior to the hearing.

R. 1, Complaint, Ex. L.

Zusy sent another letter reiterating the positions previously taken by IMG and Sirius. R. 1, Complaint, Ex. M. Ogdon's lawyers stated their belief that the dispute was subject to arbitration. R. 1, Complaint, Ex. Q. Brown wrote another letter to the parties indicating that the AAA had reviewed the various positions of the parties regarding the arbitrability of the matter and had concluded that the arbitration would proceed absent an agreement by the parties or a court order staying the proceedings. R. 1, Complaint, Ex. R. Brown repeated that the AAA could not determine issues of arbitrability and informed the parties that the arbitrator had the power to determine the existence or validity of a contract of which an arbitration clause forms a part. R. 1, Complaint, Ex. R.

Shortly thereafter, IMG and Sirius filed suit in Indiana state court, requesting a stay of the arbitration proceeding and seeking a declaratory judgment clarifying the rights and obligations of the parties under the insurance contract. They alleged abuse of process, malicious prosecution and bad-faith arbitration. Their *ex parte* request for a temporary restraining order was granted. The state court later granted Sirius and IMG's request for a preliminary injunction and entered findings on several of the matters raised in the request for declaratory relief. The AAA suspended the arbitration on learning of the state court's order. Ogdon, Piloto, Rodriguez, and the firm of

Rodriguez & Machado, P.A. (collectively the "Non-AAA Defendants") removed the state court lawsuit to the federal district court. Sirius moved to dismiss all of the claims it raised against the AAA, Brown and her supervisor, John Germani (collectively the "AAA Defendants"). The district court granted that motion.

All of the defendants then moved to dismiss the remaining claims under Rules 12(b)(2) and 12(b)(6). The district court dismissed the claims against Brown and Germani, the AAA employees, because their contacts with the State of Indiana were insufficient to confer personal jurisdiction. In particular, Germani had no contacts with Indiana at all and had merely advised Brown on how to proceed with the arbitration. Brown's only contacts with Indiana were the five letters she mailed to Zusy after Zusy insisted that all mail pertaining to the arbitration be sent to him rather than to Dawson, Sirius's registered agent in New York. The court noted that all of the correspondence related to a quasi-legal proceeding that was never intended to occur in Indiana. The court concluded that asserting personal jurisdiction over Germani and Brown in Indiana would violate the due process clause of the Fourteenth Amendment. The court therefore dismissed all claims against those two defendants.

The court next considered the AAA itself. The complaint raised three claims against the AAA. Count I sought damages for tortious actions of abuse of process, malicious prosecution and bad-faith arbitration. Count II sought preliminary and permanent injunctive relief to stay the arbitration. Count III requested a declaratory judgment specifying that the arbitration was improper and defining the rights and obligations of the parties to the insurance contract. Because the insurance contract provided that any arbitration would proceed under the AAA's own rules and procedures, the court first referred to those rules. The AAA's rules specified that neither the AAA

nor any arbitrator is a necessary party in judicial proceedings relating to the arbitration. The rules also provided that neither the AAA nor any arbitrator shall be liable to any party for any act or omission in connection with an arbitration conducted under the AAA's rules. The court noted that these provisions might release AAA from any liability to Sirius, but that IMG was not a party to the insurance contract and thus was not bound by the AAA's rules. The court instead dismissed Counts II and III against the AAA because the AAA was unnecessary to the resolution of any claim directed at the propriety of arbitration and because the AAA and its agents were entitled to arbitral immunity, an extension of judicial immunity.

The district court addressed Count I as if it were comprised of three separate claims, for malicious prosecution, abuse of process and bad-faith arbitration. The court first noted that the claim of bad-faith arbitration had not been recognized by the Indiana courts or by the courts of any other jurisdiction. Because IMG failed to identify the elements of this novel cause of action and because it appeared duplicative of the other two tort claims in Count I, the court dismissed the claim for bad-faith arbitration. The court next noted that a claim for malicious prosecution was traditionally intended to provide recourse to criminal defendants who were wrongfully charged but that a parallel action existed for civil claims, wrongful use of civil proceedings. The court noted that the elements of the civil claim are substantially similar to those in the criminal context and that IMG failed to allege facts sufficient to make out two of those elements. In particular, IMG failed to allege that the AAA initiated or caused to be initiated a cause of action against IMG. Moreover, IMG could not show that the cause of action

terminated in IMG's favor.[2] The court found that the claim was thus not yet ripe and dismissed it.

On IMG's abuse of process claim, the court noted that this cause of action required a showing of misuse or misapplication of process, for an end other than that which it was designed to accomplish. The "process" involved in IMG's claim was the arbitration initiated by Ogdon and the Non-AAA Defendants. The court noted that the AAA's role was analogous to that of a court clerk who has placed on the docket a case filed by a claimant. Although the AAA's rules required it to make a preliminary determination that a claim for arbitration is made pursuant to a contract authorizing arbitration, no rule or principle required the AAA to make a searching analysis of the claim's merits prior to docketing. Rather, the AAA was entitled to docket the claim and have it proceed until a judicial (or quasi-judicial) determination was made that the cause failed for lack of jurisdiction or on the merits of the claim. The court thus concluded that in the absence of process initiated or caused to be initiated by the AAA, the claim of abuse of process warranted dismissal for failure to state a claim.

The court similarly dismissed the claims against all of the Non-AAA defendants because none of those defendants had sufficient contacts with the State of Indiana to justify an exercise of personal jurisdiction over them in that state. Recall that the Non-AAA Defendants were

---

[2] The elements of malicious prosecution are (1) the defendant instituted or caused to be instituted a prosecution against the plaintiff; (2) the defendant acted with malice in doing so; (3) the prosecution was instituted without probable cause; and (4) the prosecution terminated in the plaintiff's favor. *Butt v. McEvoy*, 669 N.E.2d 1015, 1017 (Ind. Ct. App. 1996). The elements of a claim for wrongful use of civil proceedings simply parallel these elements.

Ogdon, his lawyers Hilda Piloto and Juan Rodriguez, and their law firm, Rodriguez & Machado, P.A. Rodriguez had the fewest contacts with Indiana, consisting only of a letter to IMG to inform the company that Ogdon would submit his claim to arbitration if IMG refused to pay his hospital bills. The court found that contact too attenuated to serve as a basis for personal jurisdiction over Rodriguez. Piloto had more contacts with Indiana, some relating to the Florida arbitration and some relating to the filing of Ogdon's complaint with the Indiana Department of Insurance. Although Piloto's contacts relating to the arbitration were slightly more numerous than Rodriguez's, the court found that filing the Miami arbitration and mailing notices to IMG in Indiana was too attenuated to subject Piloto (or her firm) to personal jurisdiction in Indiana. The court found the filing of the administrative complaint with the Department of Insurance insufficient because that action was unrelated to the claims filed in the instant case and because the contacts were few and were qualitatively insignificant.

Finally, the court considered the claims against Ogdon himself and whether personal jurisdiction could be exerted over him in Indiana. The court noted that Ogdon was never physically present in Indiana and was fortuitously involved with that state only because Sirius selected IMG as the plan administrator. Ogdon communicated with IMG in Indiana when submitting his claim for coverage and when he requested cancellation of his policy. He also caused a complaint to be filed with the Indiana Department of Insurance. All of these contacts were unconnected to the Florida arbitration, and the district court found they were insufficient to conclude that Ogdon had purposefully availed himself of the privileges and protections of Indiana law. Because Ogdon could not reasonably anticipate being haled into court in Indiana, the court concluded that an exercise of *in personam* jurisdiction

over him would not comport with due process. The court therefore dismissed all claims against Ogdon. IMG and Sirius appeal.

## II.

On appeal, IMG and Sirius raise three issues: (1) whether the complaint states a viable claim against the AAA and Brown; (2) whether Brown's contacts with Indiana are sufficient to establish personal jurisdiction over her in Indiana; and (3) whether the Non-AAA Defendants' contacts with Indiana are sufficient to establish personal jurisdiction over them in Indiana. Sirius asked the district court to dismiss with prejudice all of its claims against the AAA Defendants and so does not appeal those dismissals. IMG does not appeal the dismissal of all claims against Germani. Otherwise, IMG and Sirius appeal all other dismissals.

## A.

We begin with the district court's dismissal of the claims against the AAA and Brown on the basis of arbitral immunity and for failure to state a claim.[3] We will affirm a dismissal under Rule 12(b)(6) only if it is clear that the plaintiffs cannot establish any set of facts that would entitle them to the relief requested. *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990). In making this assessment, we read the

---

[3] For the purposes of this analysis, Brown, who was acting in her capacity as an employee of the AAA, will be treated as having the same rights and liabilities as the AAA for acts taken in the scope of her duties for the AAA.

complaint liberally and accept as true all well-pleaded allegations and the inferences that may be reasonably drawn from them. *Panaras*, 74 F.3d at 791; *Mosley*, 947 F.2d at 1339; *Gibson*, 910 F.2d at 1520-21.

IMG argues that arbitration is a matter of contract. Because the AAA concedes that IMG was not a party to the insurance contract between Ogdon and Sirius, IMG contends that the AAA engaged in tortious conduct by asserting jurisdiction over IMG. IMG contends that arbitral immunity should not apply when the sponsoring body (in this case, the AAA) has acted in the clear absence of jurisdiction. IMG acknowledges that it was unable to find any authority defining a cause of action against an arbitrator or sponsoring organization for the harm caused when that arbitrator or organization acts in the clear absence of jurisdiction. IMG asks this Court to name this new cause of action and define its parameters. The AAA maintains that it is not a proper party to any suit regarding the arbitration and that it is protected by arbitral immunity.

The AAA does not dispute that arbitration is a matter of contract. A "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). This is because arbitrators derive their authority to resolve disputes from the prior agreement of the parties to submit their grievances to arbitration. *AT&T*, 475 U.S. at 648-49. But it is not the responsibility of the AAA or even the arbitrator to determine whether a particular agreement creates a duty for the parties to arbitrate a particular grievance. *AT&T*, 475 U.S. at 649. Unless the parties clearly and unmistakably provide otherwise, the question of arbitrability is to be decided by a court, not by an arbitrator. *Id*.

IMG insists that the AAA violated that principle and decided the arbitrability of the case when it purported to assert jurisdiction over IMG and attempted to move the matter forward through arbitration. Under IMG's logic, the AAA would have been deciding the arbitrability of the case no matter what it did after the Demand was filed. Once IMG objected to the arbitration, the AAA had only two choices, to proceed or not to proceed. The AAA proceeded after determining that its filing requirements had been met and after informing IMG that it could ask a court to determine the arbitrability of the matter. Indeed, the very documents IMG relies upon to show the AAA decided the arbitrability of the matter contradict its position. The AAA, through Brown, expressly declined to decide the arbitrability of the matter. After informing IMG that it would stop the arbitration if directed by a court to do so, the AAA halted the process at once when IMG obtained a state court order. Until that time, the AAA was well within its rights to proceed with the arbitration, and was acting in a manner similar to a clerk of court upon receiving a filing that complies with the court's rules.

The cases uniformly support arbitral immunity in situations such as occurred here. We have held, for example, that arbitral immunity should extend to cases where the authority of an arbitrator to resolve a dispute is challenged. *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977). In *Tamari*, the plaintiff argued that arbitrators are not entitled to immunity if they have no right to arbitrate the dispute in the first place. 552 F.2d at 780. We held that arbitral immunity should apply when the arbitrator's authority is challenged because arbitrators will be dissuaded from serving if they can be caught up in the dispute and be saddled with the burdens of defending a lawsuit. *See Jain v. deMere*, 51 F.3d 686, 688 (7th Cir. 1995), *cert. denied*, 516 U.S. 914 (1995) (noting that the Federal Arbitration Act creates a strong presumption in favor of

arbitration). We noted that arbitrators have no interest in the outcome of the matter, and thus should not be compelled to become parties to the dispute. *Tamari*, 552 F.2d at 781. We found suing an arbitrator to be comparable to suing jurors when a litigant is dissatisfied with the outcome of a lawsuit. Such a suit would place an unfair burden on jurors and would discourage others from jury service. Moreover, the suit would not be necessary for a litigant to obtain relief. The composition of a jury, for example, can be challenged through appellate review of the original action. Similarly, IMG or any party to an arbitration can obtain relief by seeking a stay against the party bringing the arbitration. There is no need to seek a stay against the sponsoring organization. *Tamari*, 552 F.2d at 781. *See also New England Cleaning Servs., Inc. v. American Arbitration Ass'n*, 199 F.3d 542 (1st Cir. 1999) (sponsoring organization's immunity extends to all administrative tasks it performs and will apply unless the demand for arbitration is so deficient on its face as to signal a clear absence of jurisdiction); *Hawkins v. National Ass'n of Sec. Dealers, Inc.*, 149 F.3d 330, 332 (5th Cir. 1998) (arbitrators and sponsoring organizations are immune from civil liability arising from actions taken in the course of conducting arbitration proceedings); *Olson v. National Ass'n of Sec. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996) (a sponsoring organization is immune from civil liability for improperly selecting an arbitration panel even if the selection violates the organization's internal rules because quasi-judicial immunity applies to both sponsoring organizations and arbitrators; immunity protects decision makers from undue influence and protects the decision-making process from attack by dissatisfied litigants); *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 883 (2d Cir. 1990), *cert. denied*, 498 U.S. 850 (1990) (arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability in damages for all acts within the scope of the arbitral process).

IMG complains that arbitral immunity does not apply here because it was never a party to a contract authorizing arbitration and the AAA therefore acted in the clear absence of jurisdiction. IMG relies on our reasoning in *Caudle v. American Arbitration Ass'n*, 230 F.3d 920 (7th Cir. 2000). Caudle sued the AAA for breach of contract because he believed the AAA was charging an unreasonably high fee to conduct an arbitration. The district court dismissed the suit after finding that the AAA was entitled to immunity. We vacated and remanded with instructions to dismiss for want of jurisdiction after determining there was no basis for Caudle to bring the suit in federal court. Before vacating on this ground, however, we discussed arbitral immunity, questioning whether the principle was properly understood as immunity rather than a conclusion that arbitrators and sponsoring organizations are not the real parties in interest. 230 F.3d at 922. We hypothesized a scenario in which the AAA might be held liable for its actions. If Caudle had paid the entire amount requested by the AAA to conduct the arbitration and the AAA had then pocketed the money without arbitrating the dispute, we speculated that it was unlikely the AAA could claim immunity in response to a demand for a refund. *Id.* We declined to decide the issue, however, because we determined that there was no jurisdiction for Caudle to bring the case in federal court. 230 F.3d at 922.

IMG now seizes upon the *Caudle* hypothetical and argues that the AAA's assertion of jurisdiction over it when it was not a party to the insurance contract authorizing arbitration is outside the scope of arbitral immunity. IMG misses an important distinction between the *Caudle* hypothetical and the circumstances presented here. In the *Caudle* hypothetical, the facts giving rise to the potential claim have nothing to do with arbitrability or with the administrative duties of the AAA. The claim that one may not retain a payment for services that are never

rendered can be stated entirely without reference to the arbitration. Here, however, the claim is integrally related to the administrative tasks of the AAA, as noted previously, similar to the administrative tasks of a court clerk accepting a complaint for filing. *See Tamari*, 552 F.2d at 780 (arbitral immunity should extend to cases where the authority of the arbitrator to resolve a dispute is challenged); *New England Cleaning Servs.*, 199 F.3d at 545 (a sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration). The appropriate remedy for an administrative mistake by the AAA (and we are not finding here that the AAA erred in accepting the demand and proceeding with the arbitration) would be for the wronged party to seek injunctive relief against the party initiating the arbitration in an appropriate court. The AAA need not be a party to that action and should be spared the burden of litigating the appropriateness of its exercise of jurisdiction.

Because we are holding that AAA is immune from a suit based on wrongful exercise of jurisdiction, we need not explore the parameters of the new cause of action IMG seeks to define.[4] Moreover, we agree with the district court that IMG has failed to state a claim for abuse

---

[4] Our holding that the AAA is entitled to immunity applies to Count I of IMG's complaint. Count I seeks damages for tortious actions including malicious prosecution, abuse of process and "bad-faith arbitration," a cause of action coined by IMG. Counts II and III seek preliminary and permanent injunctive relief directed at staying the arbitration and a declaratory judgment specifying that the arbitration is improper and defining the rights of the parties under the insurance contract. The AAA is obviously not a real party in interest to Counts II and III, and therefore the district court properly dismissed those claims against the AAA under Rule 17(a). IMG could obtain all of the relief it seeks in Counts II and III in its claims against the Non-AAA Defendants.

of process, malicious prosecution and bad-faith arbitration (a claim that IMG concedes has never been recognized by any court). *See International Med. Group, Inc. v. American Arbitration Ass'n*, 149 F. Supp. 2d 615, 629-32 (N.D. Ill. 2001). For the claim of malicious prosecution, a plaintiff must show, among other things, that the prosecution terminated in the plaintiff's favor. *Hammond Lead Prods., Inc. v. American Cyanamid Co.*, 570 F.2d 668, 673 (7th Cir. 1977). IMG cannot show that the arbitration terminated in its favor and thus the arbitration may not serve as the basis of a malicious prosecution claim. Similarly, to make out a claim for abuse of process, IMG must show "a wilful act in the use of the process not proper in the regular conduct of the proceedings." *Groen v. Elkins*, 551 N.E.2d 876, 878 (Ind. Ct. App. 1990). IMG's pleadings reveal that Ogdon, not the AAA, initiated the arbitration process and that the AAA did nothing more than docket a properly filed demand for arbitration. We have already established that only the courts may decide issues of arbitrability and so the AAA did not abuse the process when it declined IMG's invitation to determine that the arbitration should not go forward. In sum, the AAA neither initiated nor caused to be initiated any process at all, and thus cannot be held liable for abuse of process. *International Med. Group*, 149 F. Supp. 2d at 632. Bad-faith arbitration is the name coined by IMG for the new cause of action it asks us to recognize and define. As we explained above, however, the AAA enjoys immunity from suit in these circumstances and we thus decline to recognize or define this new action. We therefore affirm the district court's dismissal of all claims against the AAA and Brown.

**B.**

That brings us to the claims against the Non-AAA Defendants. The district court dismissed these claims

because it lacked personal jurisdiction over these defendants. The Non-AAA Defendants are Ogdon, his lawyers Piloto and Rodriguez, and their law firm Rodriguez & Machado, P.A. The question of whether the court had personal jurisdiction over Ogdon's lawyers and their law firm is not a close call and we summarily affirm the district court's finding that an exercise of personal jurisdiction over the lawyers and law firm does not comport with due process. Rodriguez mailed a single letter to IMG in Indiana, informing the company that Ogdon intended to submit his claim to arbitration if IMG did not cover it. Piloto had a few more contacts with the state of Indiana. She copied IMG on correspondence with the AAA in connection with the arbitration. She also filed a complaint for Ogdon with the Indiana Department of Insurance. As the district court pointed out, all of these actions were at most tangentially related to the arbitration that is the subject of the current dispute and are insufficient to establish personal jurisdiction over Piloto. The law firm acted only through Piloto and Rodriguez and these few contacts are similarly insufficient to establish personal jurisdiction over the law firm. We affirm the dismissal of the claims against Ogdon's lawyers and their law firm for lack of personal jurisdiction.

The issue of personal jurisdiction over Ogdon in Indiana is somewhat of a closer call. Ogdon's contacts with the State of Indiana are more extensive than any of the other Non-AAA Defendants. The actions of Ogdon's attorneys on his behalf in Indiana are attributable to Ogdon for the purposes of personal jurisdiction analysis. As we have already discussed, those contacts alone are insufficient to subject the attorneys or Ogdon to personal jurisdiction in Indiana. Ogdon was never physically present in Indiana. As the district court noted, his contacts with Indiana were due to Sirius's selection of IMG as plan administrator of the insurance policy. IMG underwrote the

policy and Ogdon communicated with IMG in Indiana when he submitted claims for coverage and when he requested that his policy be cancelled. Ogdon purchased the policy when he was a resident of Canada, and the medical care for which he sought coverage was rendered in Florida.

We review dismissals for lack of personal jurisdiction *de novo*. *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000), *cert. denied*, 532 U.S. 943 (2001). To determine whether personal jurisdiction exists, we look first to Indiana's long-arm statute. *Wallace v. Herron*, 778 F.2d 391, 393 (7th Cir. 1985), *cert. denied*, 475 U.S. 1122 (1986). Indiana's statute requires a two-prong analysis. *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1232 (Ind. 2000); Indiana Trial Rule 4.4(A). First, the court must determine whether the defendant's contacts with Indiana come within the statute's "enumerated act" scheme. If they do, the court must also determine whether the defendant's contacts with the State satisfy federal due process concerns. *Anthem Ins.*, 730 N.E.2d at 1232. Ogdon concedes that his contacts with Indiana satisfy the first prong of the Indiana analysis, and we therefore focus on whether his contacts with Indiana are sufficient for due process purposes.

In order for personal jurisdiction to be proper, a defendant must have established minimum contacts with the forum state. *Central States*, 230 F.3d at 934 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985)). The crucial inquiry is whether the defendant's contacts with the state are such that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474; *Central States*, 230 F.3d at 943. The defendant must have purposefully availed himself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Burger King*, 471 U.S. at 474-75;

*Central States*, 230 F.3d at 943. Once minimum contacts have been shown, we must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant of appearing in the forum, in order to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476-77; *Central States*, 230 F.3d at 943.

A defendant's contacts with a forum state may be related or unrelated to the facts forming the basis for the lawsuit. *See Anthem Ins.*, 730 N.E.2d at 1234. Contacts related to the subject matter of the lawsuit may give rise to specific personal jurisdiction, that is, jurisdiction over the person for a case arising from those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Anthem Ins.*, 730 N.E.2d at 1234. When the contacts with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter. *Helicopteros*, 466 U.S. at 414-15; *Anthem Ins.*, 730 N.E.2d at 1234. IMG's brief does not specify whether it believes the court has specific or general personal jurisdiction over Ogdon and we will therefore consider both avenues in our analysis.

All three counts of the complaint relate solely to the arbitration. Count I seeks damages for malicious prosecution, abuse of process and bad-faith arbitration, as we discuss above. Count II seeks injunctive relief directed at staying the arbitration proceedings. Count III seeks declaratory relief, again related to the arbitration. Yet Ogdon had very limited contacts with the State of Indiana in relation to the arbitration. On January 28, 2000, Ogdon's attorneys sent a letter to IMG in Indiana threatening to pursue arbitration if IMG did not immediately pay

Ogdon's claims. Ogdon's attorneys served notice of the demand for arbitration on Sirius's New York counsel as identified in the insurance policy. Only after IMG insisted that further notices be sent to it in Indiana did the AAA send arbitration-related correspondence to IMG in Indiana. Indeed, the only other contacts Ogdon had with IMG in Indiana related to the arbitration were two letters Piloto sent to the AAA, with courtesy copies sent to IMG. Ogdon could not have reasonably anticipated being haled into court in Indiana of the basis of these three letters. Moreover, two of the letters were sent to Indiana only after IMG requested that correspondence be directed there, leading us to conclude that an exercise of specific personal jurisdiction over Ogdon would not comport with substantial justice and fair play.

We turn then to the question of whether Ogdon's contacts with Indiana were of such a continuous and systematic nature as to subject him to general personal jurisdiction in that State. Ogdon sought insurance with Sirius, a foreign corporation having a registered agent in New York. Sirius selected IMG as its plan administrator, and as the district court pointed out, all of Ogdon's contacts with Indiana occurred as a result of Sirius's selection of IMG. Ogdon's Florida insurance agent submitted his application for insurance with Sirius to IMG. Ogdon submitted his medical bills for payment to IMG, and when IMG declined to pay, Ogdon's attorneys sent a letter to IMG demanding payment and threatening arbitration. Ogdon also filed a complaint with the Indiana Department of Insurance, and requested cancellation of his policy and a refund of premium through IMG. As we detailed above, Ogdon's attorneys also sent copies of two letters addressed to the AAA to IMG's attorney in Indiana.

These contacts with the State of Indiana are too attenuated to establish general personal jurisdiction over Ogdon in Indiana. As the district court noted, all of the contacts

are due to Sirius's selection of IMG as plan administrator. Recall that to establish general personal jurisdiction, a defendant's contacts with a forum must be so continuous and systematic that the defendant could reasonably foresee being haled into court there on *any* matter. We also agree with the district court that Indiana's connection to the subject matter of this lawsuit is at best tenuous. Ogdon did not purposefully avail himself of the privileges and protections of Indiana law; rather Sirius purposefully involved IMG in the transaction that ultimately led to the lawsuit. Ogdon could not reasonably anticipate being haled into court in Indiana to defend a lawsuit based on these relatively few attenuated contacts with the State. *See Wallace*, 778 F.2d at 394-95; *Anthem Ins.*, 730 N.E.2d at 1234-35 (contacts must be substantial, continuous and systematic to sustain general personal jurisdiction); *Hotmix & Bituminous Equip., Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 830 (Ind. Ct. App. 1999) (where nonresident who had never been in Indiana engaged in numerous phone calls, letters and fax transmissions with Indiana regarding property located in another state, contacts insufficient to confer personal jurisdiction). We therefore affirm the district court's dismissal of all claims against Ogdon for lack of personal jurisdiction.

## III.

For the reasons stated above, we affirm the dismissal of all remaining claims against both the AAA Defendants and the Non-AAA Defendants.

AFFIRMED.

No. 01-3270

A true Copy:

    Teste:


               _____
               *Clerk of the United States Court of*
               *Appeals for the Seventh Circuit*