In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2058

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND
and HOWARD MCDOUGALL,

*Plaintiffs-Appellants*,

*v.*

PHENCORP REINSURANCE COMPANY,
INC. and AMERICAN INDUSTRIAL
ASSURANCE COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 5655—**Suzanne B. Conlon**, *Judge.*

ARGUED JANUARY 5, 2006—DECIDED MARCH 13, 2006

Before FLAUM, *Chief Judge*, and ROVNER and WILLIAMS,
*Circuit Judges*.

FLAUM, *Chief Judge.* This appeal concerns whether the
district court had personal jurisdiction over Defendant-
Appellee Phencorp Reinsurance Company ("Phencorp"),
a Barbados corporation. At all times relevant to this appeal,
Phencorp was a wholly owned subsidiary of Philip Services
Corporation ("PSC"), a U.S. corporation. Until 2003, PSC
was subject to a collective bargaining agreement, which
required PSC to make contributions on behalf of certain

employees to Plaintiff-Appellant Central States, Southeast and Southwest Areas Pension Fund ("Central States"). In 2003, PSC declared bankruptcy and withdrew from the pension fund. Pursuant to the Employee Retirement Income Security Act ("ERISA"), PSC and other entities constituting PSC's "control group" were required to make withdrawal liability payments to Central States. 29 U.S.C. §§ 1301(b)(1) and 1381. PSC did not make any payments.

Central States therefore brought suit against Phencorp and American Industrial Assurance Company ("AIAC")—both subsidiaries of Phencorp and members of PSC's "control group"—to recover the payments. On August 27, 2004, Central States served Kevin Brindley ("Brindley"), a United States resident whom Central States believed to be a director of Phencorp, with a complaint and summons for Phencorp. Unbeknownst to Central States, Brindley had not been a Phencorp director in the last three years.

Phencorp filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), alleging that the district court lacked personal jurisdiction over it. According to Phencorp, its only contact with the United States was through its parent company PSC, and this contact was insufficient to establish the "minimum contacts" required for personal jurisdiction. Phencorp also moved to dismiss under Federal Rule of Civil Procedure 12(b)(5), on the ground that service of process was insufficient because Brindley was not affiliated with Phencorp at the time he was served. In response to Phencorp's motion to dismiss, Central States filed a motion for extension of time in which to effect service on Phencorp. Central States also requested discovery concerning the personal jurisdiction issue.

On February 3, 2005, the district court granted Phencorp's motion to dismiss for lack of personal jurisdiction, denied Central States's request to conduct discovery, and denied Central States's motion for extension of time to effect service on Phencorp. Central States appeals. For

the following reasons, we reverse the order and opinion of the district court and remand for further proceedings consistent with this opinion.

## I. Background

Central States is considered a multiemployer pension plan under ERISA. *See* 29 U.S.C. §§ 1002(37) and 1301(a)(3). When an employer that participates in a pension plan decides to withdraw, *see id.* § 1383, it is required to pay withdrawal liability, *see id.* § 1381. For purposes of determining withdrawal liability, ERISA defines an "employer" as the business that directly participates in the plan, as well as those entities that constitute the business's "control group." *See id.* § 1301(b)(1). All entities constituting the control group incur withdrawal liability.

Under the terms of a collective bargaining agreement, PSC was required to make contributions to Central States's pension plan. PSC withdrew from the pension plan, and its obligation to contribute to the plan ended on November 29, 2003. On February 9, 2004, PSC and other members of the control group received a notice and demand for payment of withdrawal liability from Central States. *See id.* §§ 1382(2) and 1399(b)(1). On March 22, 2004, members of the control group received notice that their withdrawal liability payments were past due. PSC and other members of the control group never made the payments.

On June 16, 2004, Central States began an investigation of the control group. At this time, PSC provided Central States with access to records for PSC's subsidiaries, including Phencorp. Phencorp's records included a list of its officers and directors serving from January 1, 2000, through June 15, 2004. The list indicated that Brindley was a director of Phencorp. According to Central States, it contacted PSC and confirmed that the list of officers and directors was current.

On August 27, 2004, Central States filed suit against Phencorp and AIAC. Central States served Brindley, a United States resident, with Phencorp's complaint and summons. Phencorp did not answer the complaint or otherwise plead before the 20-day time limit expired. *See* F.R.C.P. 12(a). Central States filed a motion for entry of default and default judgment against Phencorp. On September 22, 2004, Brindley telephoned Central States and stated that although he used to be the treasurer of Phencorp, his relationship with the company ended more than three years earlier.

Phencorp filed an opposition to Central States's motion for default judgment, arguing that service was improper because Brindley was not an agent of Phencorp. Phencorp maintains that Brindley was never an employee of Phencorp; that he had not been an officer or board member of Phencorp since November 14, 2001; and that he was served at his home address, which is not owned by or affiliated with Phencorp.

Phencorp also filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), alleging a lack of personal jurisdiction. Phencorp states that it is an insurance company organized under the laws of Barbados, with its principal place of business in St. Michael, Barbados. According to Phencorp, it does not have any employees, real estate, or a physical place of business in the United States, and it does not maintain a website. Phencorp states that although in the past it provided insurance for five companies with operations in the United States, it currently does not conduct business in the United States and its only connection to the United States is that it is owned by PSC.

Central States responded to the motion to dismiss and also filed a motion for extension of time to effectuate service, in the event that the district court ruled that the

prior service was ineffective. Additionally, Central States requested discovery concerning personal jurisdiction.

On February 3, 2005, the district court denied Central States's motion for entry of default and default judgment and held that service was ineffective because Brindley was not a director of Phencorp at the time of service. The district court also granted Phencorp's motion to dismiss for lack of personal jurisdiction, without prejudice, finding that Phencorp lacked sufficient minimum contacts with the United States. The district court denied discovery to Central States, finding that Central States's evidence did not establish a "colorable basis for jurisdiction" and thus that Central States was not entitled to discovery. Finally, the district court denied Central States's motion for extension of time to effect service on Phencorp, because Phencorp did not have sufficient contacts with the United States to establish personal jurisdiction. Central States appeals.

## II.  Discussion

*A.  Standard of Review*

We review de novo the district court's dismissal of Central States's claim for lack of personal jurisdiction. *See, e.g.*, *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003). In the proceedings below, Central States had the burden to show that personal jurisdiction over Phencorp exists. *See, e.g.*, *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998).

We review the district court's decision on discovery matters for an abuse of discretion. *Commonwealth Ins. Co. v. Tital Tire Corp.*, 398 F.3d 879, 888 (7th Cir. 2004). "A court does not abuse its discretion unless . . . (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based

on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000)) (internal quotation marks omitted).

## B. Personal Jurisdiction Under ERISA

"[A]ny district court in which a plaintiff brings an action under Title I of ERISA will have personal jurisdiction over the defendant," if the defendant is properly served and has sufficient minimum contacts with the United States. *Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 808 n.3 (7th Cir. 2002); *see also* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."). Thus, in our personal jurisdiction analysis, we must determine if Phencorp had sufficient contacts with the United States as a whole.

These contacts "may be related or unrelated to the facts forming the basis for the lawsuit." *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002). "Contacts related to the subject matter of the lawsuit may give rise to specific personal jurisdiction, that is, jurisdiction over the person for a case arising from those contacts." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). "When the contacts with the forum state are unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *Id.* (citing *Helicopteros,* 466 U.S. at 414-15).

*C. Proceedings Before the District Court*

Central States argues that dismissal at the pleadings stage was inappropriate in this case because the district court considered only whether it could exercise specific personal jurisdiction over Phencorp and failed to consider whether general personal jurisdiction existed. Phencorp argues in response that the district court considered both specific and general personal jurisdiction.

We agree with Central States that the district court erred by not addressing whether general personal jurisdiction over Phencorp existed or whether additional discovery could lead to evidence that would support a finding of general jurisdiction. Although the district court did not specify whether it was considering specific or general personal jurisdiction, its analysis relates to specific personal jurisdiction. The district court explained that "Phencorp's involvement in the events giving rise to this suit is based solely on its PSC affiliation" and held that jurisdiction could not be based solely on Phencorp's status as a subsidiary of a U.S. corporation. The district court also concluded that Phencorp itself had insufficient contacts with the United States to establish jurisdiction, because although the complaint alleged that Phencorp had connections to the United States through its issuance of insurance policies to five U.S. companies, "none of the identified business transactions gave rise to this case."

The district court made one finding that could apply to the question of general jurisdiction: It found that the tax returns presented as evidence by Central States were filed by PSC for all of its subsidiaries and therefore did not demonstrate that Phencorp considered itself a U.S. domestic corporation or should be considered as such by the court. However, the district court never considered whether the five policies Phencorp issued to U.S. companies were sufficient either to establish general

personal jurisdiction or to allow Central States to conduct discovery regarding personal jurisdiction.

Phencorp points out that the district court's opinion refers to the "continuous and systematic business contacts" test, which is the test used to determine if general personal jurisdiction exists. *Int'l Med. Group*, 312 F.3d at 846. However, the district court makes the reference to "continuous and systematic business contacts" in the part of its opinion that summarizes Central States's arguments, not in the later parts of the opinion in which it analyzes personal jurisdiction and Central States's discovery request.

Additionally, the district court denied Central States's request for discovery on the ground that, "[e]ven if Central States were to conduct further discovery regarding Phencorp's contacts with the United States, discovery would not establish any contacts arising out of or relating to" Phencorp's duty to make withdrawal liability payments. The district court's denial of Central States's discovery request appears to be based on an erroneous conclusion of law—that Central States can establish personal jurisdiction over Phencorp only if Phencorp's contacts with the United States are related to the subject matter of Central States's suit. Because the district court did not consider the existence of general personal jurisdiction, its decision on discovery constituted an abuse of discretion. *See Musser*, 356 F.3d at 755 (decision based on erroneous conclusion of law constitutes an abuse of discretion).

## D. *General Personal Jurisdiction and Discovery*

Next, we must consider whether Central States has met its burden of demonstrating the existence of general personal jurisdiction, *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004), or, alternatively, has established a *prima facie* case for personal jurisdiction, such that it should have been allowed to conduct discovery. *Purdue*

*Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("[W]hen the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, as the district court did here, the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'" (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002))).

According to Central States, it has met its burden of establishing personal jurisdiction. It emphasizes that Phencorp was identified as a domestic corporation on 2000, 2001, and 2002 U.S. tax forms and issued at least five insurance policies to U.S. companies between 1995 and 2004. Additionally, Central States suggests that Phencorp may have kept in communication with those five policyholders, and questions whether Phencorp has issued insurance policies to any additional U.S. customers. Furthermore, Central States argues that even if these five policies themselves are not sufficient to demonstrate the existence of personal jurisdiction, it should have been granted discovery to determine if additional contacts exist that would establish general personal jurisdiction. In the district court, Central States requested discovery "with respect to the negotiation of the [five policies issued to U.S. companies], the terms of the policies themselves, the monitoring of the policies, the claims filed, if any, under the policies, the premiums collected, the underwriting of the policies, . . . the attempts, if any, to secure other business in the United States," and the total percentage of Phencorp's business the policies represent.

Phencorp admits that it has provided insurance policies to U.S. customers, but maintains that any contacts it once had with the United States ended in 2004, when the last of the five policies expired. Phencorp submitted a declaration of Phillip Young ("Young"), a director of Phencorp, in support

of this assertion. Young stated that: Phencorp is a Barbados Corporation, with its principal place of business in St. Michael, Barbados; Phencorp has no employees in Illinois or elsewhere in the United States and, to the best of his knowledge, never has; Phencorp owns no real estate in Illinois or elsewhere in the United States and, to the best of his knowledge, never has; Phencorp operates no place of business in Illinois or elsewhere in the United States and, to the best of his knowledge, never has; Phencorp maintains no website and is not referenced on PSC's website; Phencorp "does not currently do any business in the United States"; to the best of his knowledge, the only business dealings Phencorp has ever had with parties operating in the United States are issuing reinsurance policies to four U.S. companies, from 1995 to 2002, and providing insurance under an excess directors and officers' liability policy for a U.S. company, from 2003 to May 2004.

We agree with the district court that Central States has not met its burden of demonstrating personal jurisdiction over Phencorp. Four of the five policies that Phencorp issued to U.S. companies expired by 2002, and the fifth expired in May 2004. Central States did not file suit until the fall of 2004. *See Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) ("jurisdiction is normally determined as of the date of the filing of the suit"). Additionally, the tax forms that Central States submitted as evidence, for the years 2000, 2001, and 2002, are insufficient to demonstrate that Phencorp has continuing and systematic contacts with the United States. *See* 26 U.S.C. § 953(d) (statute allowing a foreign insurance company to elect to be treated as a domestic corporation for tax purposes).

As explained above, however, the district court erred by denying Central States's request for discovery without analyzing that request in light of the requirements for establishing general personal jurisdiction. We therefore

must determine if Central States made out a *prima facie* case for personal jurisdiction, which is required before it is allowed to conduct discovery. *See Purdue Research Found.*, 338 F.3d at 782. In this analysis, Central States "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record*." Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)) (internal quotation marks omitted). We will "read the complaint liberally, in its entirety, and with every inference drawn in favor" of Central States. *Textor v. Bd. of Regents of Northern Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983).

The fact that Phencorp may have had a sufficient connection with the United States in the past (through issuance of the five policies discussed above) does not demonstrate a "continuing" connection. However, Central States suggested in the proceedings below that Phencorp may have continuing relationships with its five U.S. policyholders and/or may be soliciting additional business in the United States. Although in his declaration for Phencorp Young states that Phencorp is not currently "doing any business" in the United States, he does not say specifically that it is not attempting to do so or does not send agents to the United States. Since Central States was denied the opportunity to engage in discovery, it is not surprising that it can do little more than suggest that Phencorp currently has minimum contacts with the United States.

Additionally, while the 2000, 2001, and 2002 tax forms are not sufficient to establish personal jurisdiction over Phencorp, they do help make out the *prima facie* case necessary for Central States to be permitted discovery. Phencorp disagrees. It argues that the tax returns were created by its parent company, PSC, and submitted to the Internal Revenue Service as an attachment to PSC's consolidated tax return. According to Phencorp, the tax forms do not "represent any 'election' by Phencorp."

There are several problems with Phencorp's arguments. First, it is possible that Phencorp informed PSC that it wished to be treated as a U.S. domestic corporation for tax purposes. Young stated in a supplemental declaration that the forms were prepared and submitted by PSC, but did not state that PSC submitted the forms without any consultation with Phencorp. It is reasonable to infer that Phencorp had some choice in the matter, as the statute that allows a foreign insurance company to be treated as a domestic corporation for tax purposes, 26 U.S.C. § 953(d), states that such a company may *elect* to be treated as a domestic corporation, *id.* (emphasis added). In doing so, it "waives all benefits to such corporation granted by the United States under any treaty," *id.* § 953(d)(1)(D), and is "treated as transferring . . . all of its assets to a domestic corporation" for purposes of certain taxes, *id.* § 953(d)(4)(A). Additionally, if Phencorp made an election, it is possible that it should still be considered a domestic corporation for tax purposes, as the election "shall apply to the taxable year for which made and all subsequent taxable years unless revoked with the consent of the Secretary [of the Treasury]." *Id.* § 953(d)(2)(a).

Although this is a close case, when we consider the record in its entirety and draw all inferences in favor of Central States, we find that Central States has established a *prima facie* case for general personal jurisdiction. Therefore, we must reverse the district court's opinion and order and remand to allow Central States to conduct discovery regarding general personal jurisdiction over Phencorp.

### E. Service of Process

Phencorp argues that personal jurisdiction also fails because Phencorp was never properly served with process. Phencorp urges us to affirm the district court's opinion solely on this alternative ground. According to Phencorp,

Central States waived this issue by failing to discuss the issue in its opening brief. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 667-68 (7th Cir. 1998). This waiver, Phencorp argues, is dispositive of the entire appeal, because lack of proper service establishes that the court does not have personal jurisdiction over Phencorp.

We can quickly dispose of this argument. The district court's decision to deny Central States's motion for an extension of time in which to effectuate service on Phencorp turned on its finding that personal jurisdiction was lacking. The district court explained that "[e]ven if Central States were permitted an extension of time and managed to effect proper service, the court would lack personal jurisdiction over Phencorp," because "Phencorp does not have sufficient contacts with the United States." We are reversing the district court's ruling on jurisdiction, because the district court did not consider general personal jurisdiction. Our holding undermines the district court's ruling on Central States's motion for extension of time; thus, that ruling must be reversed as well.

On remand, Central States should be allowed reasonable time to serve Phencorp. Equitable considerations weigh in favor of this conclusion. It appears from the record that Phencorp avoided process because its parent company failed to provide Central States with up-to-date contact information for Phencorp's officers and directors. Additionally, since failure of service is, in this case, a curable defect, it would be unduly harsh to treat Central States's failure to address the issue in its brief as dispositive of its entire claim. *Cf. Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942 (7th Cir. 2000) (finding that ERISA service of process provisions are consistent with Federal Rule of Civil Procedure 4(k)(2), which permits personal jurisdiction through international service).

### III. Conclusion

For the foregoing reasons, we REVERSE the opinion and order of the district court and REMAND to the district court for further proceedings consistent with this opinion.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*