417 F.3d 292
 BURDA MEDIA, INC. and Burda Holding GmbH & Co. KG, a German Limited Partnership, Plaintiffs-Counter-Defendants-Appellees,
v.
Christian VIERTEL, Defendant-Cross-Defendant-Appellant,
Hot Line Delivery, Inc., Defendant-Cross-Defendant-Counter-Claimant-Cross-Claimant,
Fritz G. Blumenberg, Telecommunication Partners Limited, Transvideo, TV Broadcast Center and Agate Realty, Defendants-Cross-Defendants,
Salvadora Blumenberg, Defendant-Counter-Claimant-Cross-Defendant,
John Lee, Defendant.
Docket No. 04-3426-CV.
 United States Court of Appeals, Second Circuit.
 Argued: April 26, 2005.
 Decided: August 5, 2005.
 
 COPYRIGHT MATERIAL OMITTED Daniel G. Heyman, Scarsdale, NY, for Defendant-Cross-Defendant-Appellant.
 Rita McCloy Stephanz, Clifford Chance US LLP, New York, N.Y. (Warren L. Feldman and Stephanie Chmiel, on the brief), for Plaintiffs-Counter-Defendants-Appellees.
 Before: NEWMAN, McLAUGHLIN, and HALL, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 Defendant-cross-defendant-appellant Christian Viertel appeals from a decision of the United States District Court for the Southern District of New York (Sweet, J.) denying his motion to vacate the default judgment entered against him. Burda Media, Inc. v. Blumenberg, 2004 WL 1110419 (S.D.N.Y. May 18, 2004).
 
 
 1
 In September 1997, plaintiffs-counter-defendants-appellees Burda Media Inc. ("Burda Media") and Burda Media Holding GmbH & Co. KG (together with Burda Media, "Burda" or "Burda plaintiffs") sued Viertel and several other defendants in the Southern District of New York. The Burda plaintiffs sought damages and other relief based on a fraudulent scheme conducted against them by Viertel and the other defendants. After a couple of unsuccessful attempts to serve Viertel in New York and then France, where he was eventually found, Burda served Viertel in France pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), November 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Nevertheless, Viertel failed to respond to the complaint and the district court entered a default judgment in April 2000.
 
 
 2
 In October 2003, Viertel moved to vacate the default judgment principally on the ground that service of process was invalid under the Hague Convention. He set forth two arguments relevant here. First, he argued that service was improper because the French authorities did not complete the required Certificate of service. Second, Viertel alleged that he never received the summons. The district court denied Viertel's motion in its entirety. Burda Media, 2004 WL 1110419, at *10. We affirm.
 
 
 3
 We now hold that: (1) service of process in this case complied with the Hague Convention because the police report completed by the French authorities who effected service was an adequate substitute for the formal Certificate; and (2) the district court properly found that Viertel received the summons, his affidavit to the contrary notwithstanding.
 
 BACKGROUND
 
 4
 On September 24, 1997, Burda commenced a civil RICO and fraud action against Fritz G. Blumenberg, Viertel, and various companies owned or operated by Viertel in the Southern District of New York. Burda alleged that Viertel conspired with Blumenberg, the former president of Burda Media, to defraud Burda through a scheme in which Blumenberg submitted fraudulent invoices to Burda Media for services allegedly but not actually performed by sham companies whose bank accounts Viertel controlled. Viertel, a friend of Blumenberg, allegedly participated in and benefitted from the fraudulent scheme.
 
 
 5
 Burda's repeated efforts to serve Viertel form the core of this appeal.[1] The first attempt occurred in New York on September 30, 1997, a few days after the complaint was filed. Burda attempted personal service on Viertel and his companies in New York because the companies operated out of offices in New York and Viertel maintained an apartment there as well. This personal service attempt, however, was unsuccessful.
 
 
 6
 Although once based in New York, Viertel and his companies were ultimately traced to France. In January 1998, Burda unsuccessfully tried to serve Viertel and his companies by international mail. Around this time, the district court granted what would be the first of two motions by Burda for an extension of time to serve Viertel and his companies.
 
 
 7
 After discovering Viertel's residence in France, Burda resorted to serving Viertel pursuant to the Hague Convention. On July 14, 1998, Burda transmitted several documents to the Ministry of Justice in Paris, France, requesting service upon Viertel and his companies. The package contained executed USM-94 Forms and two copies of the summons and complaint in both French and English.
 
 
 8
 The USM-94 Form is a three-page document that conforms to the Hague Convention's standards for submitting service requests to a country's central authority. The first page lists the names and addresses of the applicant, defendant, and foreign receiving authority as well as the documents to be served attached to the USM-94 Form. The second page of the USM-94 Form is entitled "Certificate," and is submitted blank to the foreign agency. The third page of the USM-94 Form contains a summary of the documents to be served.
 
 
 9
 Burda's USM-94 Forms complied with the Hague Convention: the first page listed Burda's counsel as the applicant, the various defendants on each separate form, and the French Ministry of Justice as the receiving authority, as well as the summons and complaint among the attached documents; the second page, or Certificate, was sent blank; and the third page summarized the attached documents, including the summons and complaint.
 
 
 10
 Upon receiving Burda's USM-94 Forms and the summons and complaint, the Ministry of Justice dispatched local French police to serve the documents on Viertel in August 1998. Following two visits to Viertel by the police, Burda received back two police reports documenting the service attempts. It is unclear from the record who returned these reports to Burda.
 
 
 11
 The first police report, dated August 3, 1998, describes the unsuccessful attempt by the French police to serve Viertel on behalf of two of his companies. Viertel refused to accept service because the documents pertained to companies to which he was allegedly not connected.
 
 
 12
 The second police report, dated August 12, 1998, describes the more successful attempt by the French police to serve Viertel in his personal capacity. The report describes the nature of the visit as "[d]elivery of judicial instruments from the Court of NEW YORK (USA)." According to the declaration log, Viertel "acknowledge[d] having taken possession of two files concerning [him] directly," but refused to accept those documents concerning his former companies. Viertel added, "I point out, however, that the period allowed for the service of these documents has expired. Nevertheless, I agree to take cognizance of the documents which concern me." Viertel signed the declaration log, as did Pascal Robert, the French police officer who completed service.
 
 
 13
 Although the Burda plaintiffs received these two police reports, they did not receive the formal Certificate. In November 1998, Burda submitted Proof of Service to the district court which stated that the papers attached thereto proved that on August 3, 1998 and August 12, 1998, a summons and complaint were served on Viertel and his companies in France pursuant to Rule 4 of the Federal Rules of Civil Procedure and the Hague Convention. The attached papers included (1) the USM-94 Forms sent to the Ministry of Justice on July 14, 1998, (2) the summons and complaint "in the form attached to each" USM-94 Form, and (3) the two police reports from August 1998.
 
 
 14
 In January 1999, Burda wrote Viertel at his address in France where he had been served by the French police. The Burda plaintiffs advised Viertel that they had received proof of service from the French police, but no one had yet appeared as counsel on his behalf. Viertel did not respond to this inquiry.
 
 
 15
 In December 1999, Burda filed an application for entry of default against Viertel and Telecommunication Partners Limited ("TPL"), one of Viertel's companies.[2] In the accompanying affidavit, Burda's counsel stated that Viertel and TPL were properly served and that more than twenty days had elapsed from the date of service without a response from either defendant. The Clerk of the Court issued a Clerk's Certificate of Default by Viertel and TPL. See Fed.R.Civ.P. 55(a).
 
 
 16
 In March 2000, Burda moved for entry of default judgment against Viertel and TPL. Although Viertel was served with Burda's motion for default judgment in both France and Florida, where he had recently purchased a home, Viertel did not respond. On April 10, 2000, the district court entered a default judgment against Viertel and TPL in the amount of approximately $2.75 million. See Fed.R.Civ.P. 55(b)(2). It is undisputed that Viertel knew of this default judgment by October 2001 at the latest.
 
 
 17
 Meanwhile, Viertel was criminally prosecuted in the Southern District of New York for his involvement in the fraudulent scheme. One of the witnesses at his trial was Pascal Robert, the French policeman who served Viertel in August 1998. Robert testified that he knew that the papers he delivered were legal papers "emanating from a court." He also testified that he received the documents "via the office of the Nice prosecutor." In October 2002, a jury found Viertel guilty of mail fraud, wire fraud, and conspiracy to commit mail and wire fraud. See United States v. Viertel, 2003 WL 367867 (S.D.N.Y. Feb.19, 2003) (denying motion for new trial following conviction). He was ultimately sentenced to twenty-one months' imprisonment and three years' supervised release in addition to restitution and fines. See United States v. Viertel, 98 Fed.Appx. 68 (2d Cir. May 28, 2004) (affirming conviction).
 
 
 18
 In October 2003, Viertel, pro se, moved, inter alia, to vacate the default judgment under various theories.[3] Viertel eventually obtained counsel, who clarified that Viertel moved pursuant to Fed.R.Civ.P. 60(b)(4) on the basis that the default judgment was void for want of personal jurisdiction, specifically improper service of process. Along with his motion, Viertel submitted an affidavit denying receipt of the summons.
 
 
 19
 On May 18, 2004, the district court denied Viertel's motion to vacate the default judgment in its entirety. See Burda Media, 2004 WL 1110419, at *9. The district court held, inter alia, that: (1) Burda complied with the Hague Convention notwithstanding the failure of the Ministry of Justice to return a Certificate, id. at *6-*7; (2) actual receipt of the summons is not required under the Hague Convention, id. at *7-*9; and (3) even if actual receipt of the summons is required, Viertel's affidavit denying receipt of the summons is incredible, id. at *9.
 
 This appeal followed.[4]
 DISCUSSION
 A. Standard of Review
 
 20
 Federal Rule of Civil Procedure 60(b) governs motions for relief from a final judgment or order and provides six independent grounds for relief. See also Fed.R.Civ.P. 55(c) (providing that default judgments may be set aside in accordance with Rule 60(b)). Only one of these grounds, Rule 60(b)(4), is relevant on this appeal. Under subsection (b)(4), a district court may relieve a party from a final judgment if "the judgment is void." Fed. R.Civ.P. 60(b)(4). "Whereas we generally review motions pursuant to the provisions of Rule 60(b) for abuse of discretion, we review de novo a district court's denial of a Rule 60(b)(4) motion." State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 178 (2d Cir.2004) (citing Central Vermont Public Serv. Corp. v. Herbert, 341 F.3d 186, 189 (2d Cir.2003)).
 
 
 21
 In an earlier decision, our Court had applied an abuse of discretion standard in reviewing the denial of a motion to vacate a default judgment under various subsections of Rule 60(b), including subsection (b)(4). See Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir.2002). Old Republic cited SEC v. McNulty, 137 F.3d 732, 738 (2d Cir.1998), which had correctly applied an abuse of discretion standard to review of the denial of a motion to vacate a default judgment under subsections (b)(1) and (b)(6) of Rule 60. There was no claim in McNulty that the challenged judgment was void, under subsection (b)(4), for lack of jurisdiction. Reliance on McNulty in Old Republic, which challenged a judgment under subsection (b)(4) on the ground of lack of jurisdiction, was therefore ill-advised.
 
 
 22
 We take this opportunity to reconfirm the holdings of State St. Bank and Central Vermont that the de novo standard of review is to be used for review of the denial of a motion to vacate a default judgment challenged, under subsection (b)(4), for lack of jurisdiction.[5] "Under Rule 60(b)(4) a deferential standard of review is not appropriate because if the underlying judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." State St. Bank, 374 F.3d at 178 (citation and internal quotation marks omitted).
 
 B. Burden of Proof
 
 23
 The parties cannot agree on who has the burden of proving that the district court in the underlying action had personal jurisdiction over the defendant to enter the default judgment. Viertel claims that the Burda plaintiffs continue to carry the burden of proving jurisdiction just as they would if Viertel had earlier moved to dismiss for insufficient service of process under Rule 12(b)(5). See Mende v. Milestone Tech., Inc., 269 F.Supp.2d 246, 251 (S.D.N.Y.2003) (when a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service). Burda, on the other hand, responds that Viertel, as the defaulting defendant, should bear the burden on a post-judgment Rule 60(b)(4) motion so as not to reap any benefit from his delay. This case provides us an opportunity to resolve this issue, which has been brewing in the district courts for some time. Compare Donnely v. Copeland Intra Lenses, Inc., 87 F.R.D. 80, 85 (E.D.N.Y.1980) (burden to prove personal jurisdiction remains with the plaintiff on a Rule 60(b)(4) motion), with Miller v. Jones, 779 F.Supp. 207, 210-11 (D.Conn.1991)(shifting burden to defendant on a Rule 60(b)(4) motion); see also Popper v. Podhragy, 48 F.Supp.2d 268, 271 n. 5 (S.D.N.Y.1998) (listing cases).
 
 
 24
 We now hold that on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur. See Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 401 (7th Cir.1986) (where defendant ignored process and challenged default judgment on a Rule 60(b)(4) motion, the court held that defendant should bear the burden of proving an absence of personal jurisdiction on any subsequent collateral attack on the judgment); CSC Holdings, Inc. v. Fung, 349 F.Supp.2d 613, 616 (E.D.N.Y. 2004) ("A defendant with notice of the proceedings bears the burden of establishing the claim that service was not properly effected."); Sartor v. Utica Taxi Ctr., Inc., 260 F.Supp.2d 670, 677 (S.D.N.Y. 2003) (same); Velez v. Vassallo, 203 F.Supp.2d 312, 324-25 & n. 10 (S.D.N.Y. 2002) (same).
 
 
 25
 Then District Judge José Cabranes aptly remarked that placing the burden on the defendant reflects "the concerns of comity among the district courts of the United States, the interest in resolving disputes in a single judicial proceeding, the interest of the plaintiff in the choice of forum, and the fear of prejudice against a plaintiff who, owing to delay, might in subsequent collateral proceedings no longer have evidence of personal jurisdiction that existed at the time of the underlying suit." Miller, 779 F.Supp. at 210-11 (citing Rohm & Haas Co. v. Aries, 103 F.R.D. 541, 543 (S.D.N.Y.1984)). We need say no more.
 
 
 26
 In the present case, Viertel demonstrated his knowledge of this case in August 12, 1998, when he told officer Pascal Robert that "the period allowed for the service of these documents had expired." Instead of moving to dismiss under Rule 12(b)(5), Viertel chose to delay. He now bears the burden of proving that he was not properly served.
 
 
 27
 C. Service of Process Under the Hague Convention
 
 
 28
 Viertel argues that service of process was invalid under the Hague Convention for what we decipher to be two independent reasons. First, he argues that Burda failed to comply with various procedural requirements unique to the Hague Convention. Alternatively, Viertel argues that service was invalid under the Hague Convention because he never received the summons. We reject both arguments.
 
 1. Procedural Requirements
 
 29
 Federal Rule of Civil Procedure 4(f) governs service upon individuals in a foreign country, such as Viertel. The rule allows for service of process "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention." Fed.R.Civ.P. 4(f)(1). Here, both the United States and France are signatories to the Hague Convention, and thus service of process on a defendant in France is governed by the Hague Convention.
 
 
 30
 The Hague Convention of 1965 was intended "to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." Hague Convention, Preamble. The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state. See id. Arts. 5, 6, 8, 9 & 10.
 
 
 31
 In this case, Burda elected to serve Viertel under the first option: service through the Central Authority. Under this method, process is first sent to the Central Authority of the foreign jurisdiction in which process is to be served, which in this case is the French Ministry of Justice. Id. Art. 3. The Central Authority must then arrange to have process served on the defendants. Id. Art. 5. Upon completion of service, the Central Authority must complete a Certificate detailing how, where, and when service was made, or explaining why service did not occur. Id. Art. 6. Finally, the completed Certificate is returned to the applicant. Id.
 
 
 32
 According to Viertel, service of process failed to conform to three Hague Convention procedures: (1) the Burda plaintiffs failed to prove that they sent the required documents to the Ministry of Justice; (2) the Ministry of Justice failed to complete and return a formal Certificate; and (3) the Burda plaintiffs failed to comply with Art. 15 of the Hague Convention, which governs the entry of default judgments in the absence of a Certificate confirming service. As set out below, all three arguments fail.
 
 
 33
 a. Did Burda Forward Process to the French Ministry of Justice?
 
 
 34
 Viertel first maintains that the Burda plaintiffs cannot prove that they sent any judicial documents to the French Ministry of Justice in contravention of Art. 3. Viertel is flatly wrong.
 
 
 35
 Notwithstanding Viertel's broad allegations, there is overwhelming evidence that Burda sent the Ministry of Justice the necessary judicial documents for service on Viertel, including the USM-94 Forms for each defendant, summons, and complaint. First, Viertel himself acknowledges that he obtained Burda's USM-94 Forms from the French Ministry of Justice. Indeed, Viertel provided the district court with one of the executed forms submitted by Burda to the French authorities and attached it to his affidavit in support of his motion. This form, in turn, lists the summons and complaint among the attached documents. Second, the Burda plaintiffs submitted the affidavits of their attorneys swearing to the mailing of the judicial documents. Finally, at Viertel's criminal trial, officer Robert testified that French prosecutors passed along the legal papers that he eventually delivered to Viertel. Although the record could have been more complete with other indicia of mailing, Viertel's admission and the other evidence presented sufficiently demonstrate that Burda sent the required judicial documents to the Ministry of Justice.
 
 
 36
 b. Failure to Return a Formal Certificate
 
 
 37
 Viertel next argues that service was improper because the Ministry of Justice failed to return a formal Certificate. Although the Burda plaintiffs concede that the Ministry of Justice did not return a formal Certificate in the form of page two of the USM-94 Form, they argue that the second police report was an adequate substitute. Burda's arguments are persuasive.
 
 
 38
 The Hague Convention requires a Central Authority or its designated agent to "complete a certificate in the form of the model annexed to the present Convention." Hague Convention, Art. 6. This model requires the foreign agency to state whether the service occurred or not and to "include the method, the place, and the date of service and the person to whom the document was delivered." Id.
 
 
 39
 As the district court properly observed, the police report dated August 12, 1998 provides all of this information and thus serves the same purpose as a formal Certificate: to confirm service, or lack thereof, under the Hague Convention. The fact that the French police, rather than the Ministry of Justice, completed the report is immaterial. The express terms of Art. 6 provide that the Central Authority "or any authority which it may have designated for that purpose" shall complete the Certificate. Id.; see Greene v. Le Dorze, 1998 WL 158632, at *4 (N.D.Tex. Mar.24, 1998) (concluding that a Certificate was properly completed by local French police).
 
 
 40
 We see no reason why the police report cannot serve as a substitute for a formal Certificate in this case. Notwithstanding its separate format, the police report provides the same information as the Certificate. The language of Art. 6 does not expressly require the exact form to be filled out, but merely requires a certificate "in the form of the model." To hold that only the exact form must be used would not only elevate form over substance, but would impose an unreasonably strict degree of compliance with the Hague Convention.
 
 
 41
 Cases addressing similar issues have held that the failure to comply strictly with the Hague Convention is not automatically fatal to effective service. See Greene, 1998 WL 158632, at *2. One court aptly observed that although the Hague Convention "carefully articulates the procedure which a litigant must follow in order to perfect service abroad, . . . it does not prescribe the procedure for the forum Court to follow should an element of the procedure fail." Fox v. Regie Nationale des Usines Renault, 103 F.R.D. 453, 455 (W.D.Tenn.1984). Consequently, the same court held that the Hague Convention should be read together with Rule 4, which "stresses actual notice, rather than strict formalism." Id.
 
 
 42
 In Fox, the district court denied a foreign defendant's motion to dismiss based on insufficiency of process under the Hague Convention. Id. The foreign defendant based its claim on the failure of the French Central Authority to return a Certificate to the plaintiff documenting the service upon the defendant. Id. The court held that service of process was properly perfected under the Hague Convention, notwithstanding the failure of the Central Authority to return a Certificate, where the plaintiff attempted in good faith to comply with the Hague Convention and where the defendant had sufficient notice of the action such that no injustice would result. Id.; see also Greene, 1998 WL 158632, at *2-3 (denying motion to dismiss on the basis of a technical defect in the returned Certificate where plaintiff followed the Hague Convention to the letter and defendant was not prejudiced).
 
 
 43
 Here, Burda attempted in good faith to comply with the Hague Convention. It was certainly not Burda's fault that the French authorities did not return a formal Certificate. Cf. Greene, 1998 WL 158632, at *3 ("The fact that the French authorities made a mistake—one which appears to be merely clerical—does not render service ineffective."). Moreover, Viertel suffered no injustice by the return of a police report instead of a formal Certificate: the material information was the same; only the format differed.
 
 
 44
 Viertel argues that Fox and Greene are inapposite because the defendants in those cases did not contest actual receipt of the summons. In fact, both defendants filed answers. However, Viertel does not dispute having received the complaint in this action, so like the defendants in Fox and Greene, there is no prejudice to him.
 
 
 45
 c. Article 15
 
 
 46
 Article 15 provides that a member state may permit its courts to enter a default judgment in the absence of a returned Certificate where at least six months have passed since the documents were sent to the defendant and the plaintiff has made "every reasonable effort" to obtain a Certificate. Hague Convention, Art. 15. Viertel argues that the Burda plaintiffs did not comply with Art. 15 in obtaining a default judgment because they made no effort, let alone "every reasonable effort," to obtain a Certificate. We reject this argument because Art. 15 is inapplicable in this case.
 
 
 47
 On its face, Art. 15 applies only where "no certificate of any kind has been received." Id. As discussed, the second police report qualifies as a Certificate and certainly meets this broader standard of "any kind" of Certificate. Therefore, Art. 15 cannot serve as a means to challenge the default judgment in this case.
 
 
 48
 While we find that service was properly effected, we caution future plaintiffs from relying on something less complete and official than the police report in this case. A prudent plaintiff might seek to obtain a Certificate "of any kind" rather than rely on a court's post hoc approval of a potentially problematic proof of service. In other words, where there is any doubt as to whether an adequate Certificate "of any kind" was returned, a plaintiff should comply with Art. 15 before seeking a default judgment. Doing otherwise runs the risk that a default judgment will be vacated under Art. 15.
 
 
 49
 In this case, of course, Burda did not need to comply with Art. 15 because the police report adequately served the purposes of the Certificate. The Burda plaintiffs presumably were frustrated with Viertel's dilatory tactics and their own costly efforts to serve process. Although not a model, Burda complied with the Hague Convention.
 
 2. Actual Receipt of the Summons
 
 50
 Alternatively, Viertel argues that service was invalid because he never received the summons.
 
 
 51
 In denying Viertel's motion, the district court first concluded that actual receipt of the summons is not required under the Hague Convention. The district court further found that, even if actual receipt of the summons is required, Viertel's affidavit denying receipt of the summons was incredible. In light of the strength of this alternative holding, we do not need to reach the thornier issue of whether actual receipt of the summons is required under the Hague Convention.
 
 
 52
 Toward meeting his burden to show that he was not served with the summons, Viertel offered only his own affidavit. The district court, as fact-finder, had ample evidence from which to conclude that Viertel's affidavit lacked credibility, including his fraud conviction and his two-year delay in moving to vacate for improper service despite his knowledge of the default judgment since 2001 at the latest. See Frankart Distributors, Inc. v. Levitz, 1990 WL 127697, at *2 (E.D.N.Y. Aug.16, 1990) (bare allegation made over four and one-half years after service that envelope mailed by process server was empty held insufficient to impeach process server's sworn statement that a complaint and summons had been mailed).
 
 
 53
 Although Viertel argues that the Burda plaintiffs submitted no proof that they sent a summons to the Ministry of Justice or that the French police served a summons on Viertel, there is ample evidence to the contrary. While neither the police reports nor officer Robert's testimony explicitly mentions "summons," it is clear that the documents accepted by Viertel were legal documents coming from a New York court. There was no other purpose for officer Robert's visit but to serve these documents. Moreover, Viertel does not dispute receiving the complaint and acknowledges the receipt of two transmission folders. Yet he has deliberately chosen not to identify the documents within those folders. It is patently incredible to assume that the documents within those folders have no connection to those documents provided by Burda to the French authorities, which included the summons. Thus, we affirm the district court's alternative holding that Viertel failed to prove that he did not receive the summons.
 
 
 54
 Finally, in addition to the Hague Convention, service of process must also satisfy constitutional due process. See Ackermann v. Levine, 788 F.2d 830, 838 (2d Cir.1986). Due process requires "notice reasonably calculated ... to apprise interested parties of the pendency of the action." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Burda's service of process by personal delivery through the French authorities easily meets this standard, a point which Viertel does not dispute in his brief. Cf. Ackermann, 788 F.2d at 841 ("[S]ervice by registered mail does not violate constitutional due process."); 4A C. Wright & A. Miller, Federal Practice & Procedure § 1095 at 515-16 (2002) (service of process by personal delivery within the state "avoids any question as to whether the defendant has received notice of the suit and is unlikely to give rise to any objections to the service based on due process").
 
 CONCLUSION
 
 55
 For the foregoing reasons, we AFFIRM the judgment denying Viertel's motion to vacate the default judgment.
 
 
 
 Notes:
 
 
 [1]
 Despite their troubles with Viertel, the Burda plaintiffs easily served Blumenberg, who eventually settled and is not a party to this appeal. Blumenberg was later criminally prosecuted and convicted in connection with this schemeSee United States v. Blumenberg, 96 Fed.Appx. 776 (2d Cir. May 13, 2004) (affirming sentence imposed on charges of mail and wire fraud, conspiracy, and filing false tax returns).
 
 
 [2]
 With respect to service on Viertel's companies, Burda sought the default judgment only against TPL because Burda had proof that Viertel was a managing director of TPL and therefore was served as its representative
 
 
 [3]
 Although Burda obtained a default judgment against Viertel and TPL, Viertel did not seek to vacate the default judgment as to TPL
 
 
 [4]
 In August and October 2004, while Viertel's appeal was pending in this Court, Viertel moved for reconsideration of the May 2004 decision denying his motion to vacate the default judgment. Viertel proceededpro se despite the fact that he was represented by counsel for purposes of his original motion and this appeal. In February 2005, the district court denied Viertel's motion for reconsideration because he failed to present any facts or legal authority demonstrating that the original judgment was in error. See Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) (per curiam) (observing that a district court may entertain and deny a Rule 60(b) motion filed during the pendency of an appeal without disturbing the jurisdiction of the Court of Appeals).
 
 
 [5]
 This opinion has been circulated to the members of the panels that decidedOld Republic, State St. Bank, and Central Vermont.