Rajiv GARG, Plaintiff,

v.

WINTERTHUR, Defendant.

No. 07CV0510(ADS)(AKT).

United States District Court,
E.D. New York.

Nov. 23, 2007.

Weiser & Associates, by Jaimee L. Nardiello, Esq., of Counsel, New York, N.Y., Attorneys for Plaintiff.

Epstein Becker & Green, P.C., by Evan J. Spelfogel, Esq., of Counsel, New York, N.Y., Attorneys for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

In this case, the Court must determine whether it is reasonable to exercise jurisdiction over a Swiss company having no physical presence in New York, but who actively administers an employee benefits plan on behalf of a corporation that has such presence.

## I. BACKGROUND

Rajiv Garg (the "plaintiff" or "Garg") was employed by Credit Suisse First Boston ("CSFB") as a supervisor of the Global Market Risk Management group from 1994 until 1999, when he claims that he became disabled and was no longer capable of performing his professional responsibilities. During his employment, Garg worked both at the CSFB office located in Manhattan, New York, and from his home in Nassau County, New York.

The defendant, Winterthur Life (the "defendant" or "Winterthur"), is an insurance company organized and incorporated under the laws of Switzerland, with its principal place of business in Winterthur, Switzerland. The defendant acts as the plan administrator of certain occupational benefits provided to employees of the Credit Suisse Group, the parent company of Credit Suisse First Boston, to insure those employees against the economic consequences of age, disability, and death. The benefit plan at issue is known as the Pension Fund International of the Credit Suisse Group (the "PFI Plan"). The plaintiff enrolled and participated in the PFI Plan, which provided for payment of approximately $112,500.00 per annum to Garg in the event he became disabled from his employment. According to the Rules and Regulations of the PFI Plan, Credit Suisse contributed the full amount needed to maintain the plan and employees were exempt from contribution. (Affidavit of Marcel Süsskind, Exh. 1, *Pension Fund International of CS First Boston (Europe) AG, Rules and Regulations*, at art. 34 and 35 [hereinafter *PFI Rules and Regulations* ] ).

On September 2, 1999, CSFB ended the plaintiff's employment with an effective termination date of June 29, 1999 because of an alleged permanent disability that rendered him unable to perform the essential functions of his employment. On January 10, 2002, Winterthur transferred $199,768.50 to a London bank account held by Garg, representing the accumulated value of his vested benefits, described by the defendant as a termination benefit. After his employment was terminated, the plaintiff sought to receive additional benefits from Winterthur in the form of disability payments under the PFI Plan.

When the plaintiff's attempts to recover disability benefits from the defendant were unsuccessful, he commenced an action against the defendant in the United States District Court for the Southern District of New York pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.* The defendant moved to dismiss for lack of personal jurisdiction, improper service of process, and improper venue. The District Court dismissed the case for improper venue, without reaching the defendant's other grounds for dismissal. *Garg v. Winterthur*, No. 05CV5870, 2007 WL 136263, at *2 (S.D.N.Y. Jan. 18, 2007). The court concluded that the plaintiff had failed to establish that the defendant could be found within the Southern District. *Id.* Furthermore, the case was not transferred to this District because no request for a transfer had been made. *Id.* The plaintiff then re-filed his action in the Eastern District of New York.

On March 12, 2007, the plaintiff arranged for service upon the defendant in Switzerland through that country's Central Authority as authorized by the Hague Convention on the Service abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6638 (hereinafter the "Hague Convention" or "Convention"). All documents initially served upon the defendant, including the plaintiff's complaint, were in English with no accompanying translation. On April 2, 2007, the defendant filed the present motion to dismiss claiming, among other things, that service violated the Hague Convention because no translation accompanied the litigation documents. On April 26, 2007, the plaintiff arranged for a German translation of the documents to be served upon the defendant by the Central Authority.

By its motion, the defendant requests that this Court dismiss the plaintiff's claim pursuant to FED.R.CIV.P. 12(b)(2), (3), (4), and (5). Specifically, the defendant alleges that: (1) service of process upon it was insufficient to establish jurisdiction pursuant to the requirements of the Hague Convention; (2) this Court lacks the required personal jurisdiction over the defendant; and (3) this Court is an improper venue for this case to be decided. In addition, the defendant states that the plaintiff's complaint should be dismissed because it fails to name a valid legal entity as a defendant. The defendant argues that "Winterthur Life," also known as "Winterthur Swiss Insurance Company," the party who was served in the action, is the plan administrator of the PFI Plan and there is no entity known simply as "Winterthur."

## II. DISCUSSION

As an initial matter, the Court notes that the proper name of the defendant in this action is "Winterthur Life." The plaintiff contends that all of the paperwork uncovered in its initial investigation of the claim refers to the administrating entity as "Winterthur" or "Winterthur–Columna." Further, the plaintiff includes a page from defendant's internet webpage explaining the corporate structure of the Credit Suisse Group. On that page, "Winterthur" is listed as a legal entity. However, communications addressed to the plaintiff regarding the PFI Plan are signed by an employee on behalf of "Winterthur Life."

Defendant does not deny that it was served with notice of the action pending in this Court or that it is in fact the entity responsible for administering the PFI Plan on behalf of the Credit Suisse Group. Courts have been inclined to allow amendment where the proper entity is served, though incorrectly named, absent a showing of prejudice. *See United States v. Edwards*, 241 F.R.D. 146, 148 (E.D.N.Y. 2007) (allowing amendment under the "misnomer rule" where "it would be reasonable to conclude that plaintiff has in mind the proper entity or person, merely made a mistake as to the name, and actually served the entity or person intended"); *In re Scient, Inc.*, No. 03CV2377, 2007 WL 594906, at *7 (Bankr.S.D.N.Y. Feb. 22, 2007) (allowing amendment of summons where it failed to properly name the defendant). Further, FED.R.CIV.P. 15(a) establishes that leave to amend "shall be freely granted when justice so requires." Thus, the Court will order the plaintiff to amend the summons and complaint to replace every statement of the name "Winterthur" with the name "Winterthur Life."

### A. As to Personal Jurisdiction

The defendant argues that the exercise of personal jurisdiction is inappropriate in this action because it does not maintain offices or employees in the United States, and all of the employees responsible for

the administration of the PFI Plan reside and work in Switzerland. Further, the defendant states that it is not a registered New York insurance company; it does not own, use or possess any real estate in New York; it does not maintain a telephone listing in New York; it does no public relations work in New York State; and it does not have individuals permanently located in New York to promote its interests.

The plaintiff bears the burden of establishing the forum court's jurisdiction over the defendant. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). Prior to discovery, the plaintiff may defeat the defendant's motion to dismiss made pursuant to Rule 12(b)(2) by making a *prima facie* showing of jurisdiction through his complaint, supporting affidavits, and other evidentiary submissions. *PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). These materials should contain "an averment of the facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). The Court must take all of the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *PDK Labs.*, 103 F.3d at 1108.

The test for personal jurisdiction has two components: the minimum contacts inquiry and the reasonableness inquiry. "The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Metropolitan Life*, 84 F.3d at 567 (citations omitted). Here, ERISA allows for nationwide service of process, providing that process "may be served in any district where a defendant resides or may be found." In its motion papers, the defendant recognizes that many courts have interpreted ERISA's na-

tionwide service of process provision to confer personal jurisdiction over a defendant who has sufficient minimum contacts with the United States as a whole, rather than just with the forum state. This is sometimes referred to as the "national contacts test."

The defendant contends that courts in other jurisdictions have criticized the national contacts test as impinging on the traditional notions of constitutional due process. However, the Second Circuit has ruled that where a federal statute contains a national service of process provision, the relevant "minimum contacts" are those directed by the defendant to the United States as a whole. *See IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056–57 (2d Cir.1993); *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974); *see also Aetna Life & Casualty v. Owen*, No. 04CV817, 2004 WL 2381744, at *1 (S.D.N.Y. Oct. 13, 2004) (applying the national contacts test to the ERISA nationwide service of process provision).

Most frequently, the national contacts test is used to confer jurisdiction over a resident of the United States who would not be subject to jurisdiction in the forum state. *See, e.g., Aetna Life & Casualty*, 2004 WL 2381744, at *2. However, the national contacts test has been used to confer jurisdiction over a resident of a foreign country who has established sufficient contacts with the United States, rather than with one specific state. *See Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 875 (7th Cir.2006) (analyzing the contacts of a Barbados corporation under the ERISA national contacts test); *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC.*, No. 05CV9016, 2006 WL 708470, at *3 (S.D.N.Y. March 20, 2006) (applying na-

tional contacts test to a corporation organized in Netherlands Antilles, with offices in Curacao).

Under the minimum contacts analysis, the defendant's contacts "may be related or unrelated to the facts forming the basis for the lawsuit." *Int'l. Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir.2002). Where the defendant's contacts are related to the subject matter of the lawsuit, specific jurisdiction over the person of the defendant may obtain. *Id.* However, where the contacts with the forum are unrelated to the subject matter of the lawsuit, "general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in [the forum] for any matter." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

 The defendant stresses that it was merely the administrator of the PFI Plan and did not act as an insurer on behalf of CSFB. As such, the defendant argues that it has no significant contacts or physical presence in the United States, and less in New York. However, "it is well established that a lack of physical presence in the forum is not a bar to the exercise of personal jurisdiction over the defendant." *Pension Committee of the University of Montreal*, 2006 WL 708470, at *5. The plaintiff alleges that the defendant maintained the following contacts with New York: (1) it contracted with Credit Suisse First Boston to provide insurance to the plaintiff, a resident of Nassau County, and other employees living in New York; (2) the PFI Plan is marketed towards Credit Suisse employees "who do not work in Switzerland, but who do work in New York;" (3) the defendant sent correspondence to and received correspondence from the plaintiff in Nassau County, New York; (4) the PFI policy was administered by the defendant through continuous contact with Nassau County; and (5) in his complaint, the plaintiff alleges that Winterthur is a subsidiary of Credit Suisse Group, the parent company of Credit Suisse First Boston, which has offices in New York.

In certain cases, a single contact with the forum can be sufficient to establish specific personal jurisdiction, but it must be of such weight that the defendant should reasonably anticipate that it would be subject to the jurisdiction of the forum. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) ("It is sufficient for the purposes of due process that the suit was based on a contract which has substantial connection with that [forum]."); *see also Uebler v. Boss Media*, 363 F.Supp.2d 499, 505 (E.D.N.Y.2005) (finding that a single transaction would be sufficient for the Court to obtain jurisdiction under the transaction of business prong of New York's long arm statute).

Further, in *Smit v. Isiklar Holding A.S.*, 354 F.Supp.2d 260 (S.D.N.Y.2005), the court held that the plaintiff made a *prima facie* showing of personal jurisdiction over a defendant where the alleged activities, if true, would establish that the defendant "entered into or assumed obligations under a contract in the state of New York and obligated itself to perform that contract on an ongoing basis in New York." *Id.* at 267. Although the Court is unaware of any cases in this district analyzing jurisdiction over insurance or employee benefits plan administrators who have obligated themselves to administer plans in the United States, it finds persuasive the decisions of courts in other dis-

tricts that have determined the issue under similar circumstances.

First, in *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000), the Tenth Circuit found that an employee benefits plan and its third-party administrator, based in Alabama, had sufficient contacts with the state of Utah where they pre-certified the insured's treatment at a Utah hospital and paid a Utah resident for part of the insured's care. *Id.* at 1213. Further, the court found that "[b]ecause defendants rendered benefits in Utah, they knew or should have known that a dispute over benefits could arise in Utah." *Id.* In addition, in *Sanders v. State Street Bank and Trust Co.*, 813 F.Supp. 529 (S.D.Tex.1993), the court found that an employee savings plan administrator had ample contacts with the forum where it administered the savings plans of over ten thousand individuals who resided, earned the money contributed to their savings plan, and made decisions regarding their investments within the forum. *Id.* at 532 (concluding that the defendant possessed "sufficient contacts with the state simply by virtue of being the plan administrator").

Here, although it is not known where the agreement was executed, Winterthur entered into a "Deed of Adherence" agreement with Credit Suisse Group to administer the PFI Plan. The PFI Plan had the stated purpose of providing "occupational benefits for the employees not residing or working in Switzerland," some of whom lived and worked in the United States. *See PFI Plan Rules and Regulations*, at art. 2. The Plaintiff alleges that he and other employees in the New York office of Credit Suisse enrolled in the PFI Plan and Winterthur administered the plan to Credit Suisse employees residing in the United States. In addition, Winterthur corresponded with the plaintiff by sending information regarding his benefits to his address in Nassau County and receiving communications from the plaintiff from the same address. Accordingly, the Court finds that the plaintiff has made a *prima facie* showing that the defendant had sufficient minimum contacts with the United States as a whole, and likely with the state of New York, sufficient to be subject to specific personal jurisdiction in this action and in this state.

The second step of the jurisdiction inquiry "asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'— that is, whether it is reasonable under the circumstances of the particular case." *Metropolitan Life*, 84 F.3d at 568 (citation omitted). Even where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires that the exercise of personal jurisdiction must be fair and reasonable to the defendant. *Peay*, 205 F.3d at 1212. The factors considered in the reasonableness inquiry include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy." *See Metropolitan Life*, 84 F.3d at 568.

Assuredly, the defendant will be inconvenienced by defending an action in this forum, however, it has failed to show that this inconvenience would render the exercise of jurisdiction unreasonable. The reasonableness prong rarely defeats jurisdiction where a defendant has sufficient forum contacts. *See Metropolitan Life*, 84 F.3d at 568. Further, in *Heft v. AAI Corporation*, 355 F.Supp.2d 757 (M.D.Pa.2005), the court stated: "The federal interest underlying ERISA—facilitation of beneficiary claims .... is un-

doubtably proper and clearly advanced by nationwide jurisdiction over administrators." *Id.* at 770. The *Heft* court noted that inconvenience to the defendant in such cases will rise to the level of creating a constitutional concern only in highly unusual cases. *Id.; see also Peay,* 205 F.3d at 1212 ("Even though [the Alabama] defendants may be inconvenienced by defending this action in Utah, they cannot show that this burden rises to the level of constitutional concern.").

Furthermore, the courts of the United States, and particularly this district, have an interest in providing a means of redress when residents' claims under their employee benefits plans are denied. Finally, the plaintiff would be faced with a severe disadvantage if he is forced to litigate his claim in a foreign country. *See McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 ("It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable."). On balance, the Court finds that the exercise of jurisdiction over the defendant in this district is fair and reasonable under the circumstances of this case.

### B. As to Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *The American Institute of Certified Public Accountants v. Affinity Card, Inc.,* 8 F.Supp.2d 372, 375 (S.D.N.Y.1998). FED.R.CIV.P. 4(f)(1) permits service upon an individual defendant located in a foreign country "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." The Hague Convention establishes the guidelines for service of judicial and extrajudicial documents between signatory nations. The United States and Switzerland are signatories to the Convention.

Article 2 of the Convention provides that each contracting party "shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States .…" Hague Convention, art. 2. The Convention permits several methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state. *See Burda Media, Inc. v. Viertel,* 417 F.3d 292, 300 (2d Cir.2005).

When service is conducted via a state's Central Authority, the Convention provides that "[i]f the Central Authority considers that the request [for service] does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request." Hague Convention, art. 4. The Central Authority is directed to serve conforming documents or arrange for their service on the recipient. Hague Convention, art. 5. Once the document has been served, the State must complete a certificate indicating the method of service, the place and date of service and the person to whom the document was delivered. Hague Convention, art. 6.

"Switzerland has designated a Central Authority for each canton." *Hague Convention: Information for Both Service and Evidence Abroad, available at http://*

*bern.usembassy.gov./hague_convention. html (last visited Nov. 15, 2007).* The rules set forth by Switzerland under the Hague Convention require that documents proffered for service should be in the official language of the canton where they are to be served or accompanied by translations into that language. *Id.* Further, the Swiss rules note that Switzerland made specific reservations regarding translations at the time it agreed to the Convention and "unless the party to be served will accept service voluntarily, the documents to be served must be accompanied by a translation into the language of the authority addressed." *Id.* German is the official language spoken in Winterthur, Switzerland. (Affidavit of Marcel Süsskind, at ¶ 4).

■ Here, the plaintiff served its summons and complaint on March 12, 2007. The documents initially transmitted to the Central Authority for service upon Winterthur were in English and unaccompanied by a German translation as required by the Swiss rules. The defendant claims that it did not voluntarily accept service and the plaintiff did not provide it with a German translation at the time of service in accordance with the rules. Therefore, the defendant contends that service was insufficient for this Court to exercise jurisdiction over it. The defendant made the present motion to dismiss on April 3, 2007.

The plaintiff claims that the defendant's argument should fail for two primary reasons. First, the plaintiff notes that it served a German translation of the litigation documents on the defendant on April 26, 2007, thus curing any translation defect in its service of process. Second, the plaintiff states that the Central Authority provided him with a completed Certificate of Service, which " 'is *prima facie* evidence that the Authority's service was made in compliance with the Convention,' and is rebutable only on a showing of substantial prejudice and a lack of actual notice." (Plaintiff's Opposition to Motion to Dismiss at 8 (citations omitted)).

The Court first notes that failure to strictly comply with the provisions of the Hague Convention does not automatically lead to the conclusion that service is insufficient. *Burda Media,* 417 F.3d at 301. Indeed, the Hague Convention "should be read together with Rule 4, which 'stresses actual notice, rather than strict formalism.' " *Id.* (quoting *Fox v. Regie Nationale des Usines Renault,* 103 F.R.D. 453, 455 (W.D.Tenn.1984)). Thus, where the plaintiff made a good faith attempt to comply with the Convention, and where the defendant received sufficient notice of the action such that no injustice would result, the court may deem service of process properly perfected. *Burda Media,* 417 F.3d at 301; *see also Lemme v. Wine of Japan Import, Inc.,* 631 F.Supp. 456, 464 (E.D.N.Y.1986) (finding service sufficient where the defendant had actual notice of the existence of the proceeding against it although only the summons was translated into the recipient's native language).

"The Central Authority's return of a completed certificate of service is '*prima facie* evidence that the Authority's service . . . was made in compliance with the Convention.' " *Resource Trade Finance, Inc. v. PMI Alloys, LLC,* No. 99CV5156, 2002 WL 1836818, at *4 (S.D.N.Y. Aug. 12, 2002) (quoting *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1389 (8th Cir. 1995)). In *Resource Trade,* the court declined to quash the service of a document for failure to include a Summary, as required by the Hague Convention. *Resource Trade,* 2002 WL 1836818, at *4. The court found that the Swiss Central Authority's return of a completed Certificate of Service was *prima facie* evidence of prop-

er service and further noted that the defendant failed to argue that it lacked actual notice or was prejudiced by the allegedly missing Summary. *Id.* Similarly, here, the Central Authority returned a completed Certificate of Service to the plaintiff and Winterthur has not argued that it did not have timely notice of the suit against it.

Furthermore, the plaintiff argues that it cured any defect in the initial service by serving a German translation of its summons and complaint on Winterthur on April 23, 2007. Courts have upheld service pursuant to the Hague Convention where defects of service were cured within a reasonable time. *See, e.g., Treeline Investment Partners, LP v. Koren,* No. 07CV1964, 2007 WL 1933860, at *5 (S.D.N.Y. July 3, 2007) (finding service proper "[d]espite the defects in plaintiffs' first attempt at service, [because] they were cured by plaintiffs' second attempt ...." and defendant did not dispute that he received actual notice of the lawsuit); *Parkins v. St. John,* No. 01CV11660, 2004 WL 1620897, at *3 (S.D.N.Y. July 19, 2004). Further, as Winterthur had notice of the action against it and does not allege that it was prejudiced in any way by the late service of a German translation, the Court finds that service of process on Winterthur was perfected in accordance with the Hague Convention.

## C. As to Venue

The ERISA statute contains a venue provision providing that an action may be brought in any federal district where "the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The defendant claims that venue is inappropriate in this district because the plan is not administered in this district; any alleged "breach" would have occurred in Switzerland, where the decision to deny

the plaintiff's claim was made; and it is not found in this district because it does not have sufficient minimum contacts to satisfy the test for personal jurisdiction. Although there is no dispute that the plan was administered elsewhere, the plaintiff argues that venue is proper in the Eastern District of New York because the "breach" occurs where the benefits would have been received, namely, in Nassau County. Further, the plaintiff argues that the defendant can be found in this district because it availed itself of conducting activities in the forum.

In dismissing this action previously, the Southern District found that the plaintiff failed to allege or offer evidence "that the breach took place [in the Southern District of New York] or that Winterthur resides [there]." Thus, the Court limited its analysis to the question of whether the defendant "may be found" in the Southern District. The court adopted the test laid out by the Ninth Circuit in *Varsic v. United States Dist. Court for the Central Dist. of California,* 607 F.2d 245 (9th Cir.1979), which provides that the defendant must have purposefully availed itself of the privilege of conducting activities in the forum; the claim must be one which arises out of the defendant's forum related activities; and the exercise of jurisdiction must be reasonable. The Court then noted the Second Circuit cases analyzing the *Varsic* test under similar factual circumstances and found that Garg failed to establish that "there was some purposeful activity in the district in connection with the administration of the relevant ERISA plan." *Garg,* 2007 WL 136263, at *2.

The courts within this Circuit have often looked to the position of the plaintiff during the administration of an ERISA plan in deciding whether the defendant may be "found" within the district for venue purposes. For example, in *Seitz v. Bd. of Trs.*

*of the Pension Plan of New York State Teamsters Conference Pension & Ret. Fund,* 953 F.Supp. 100 (S.D.N.Y.1997), the court found venue proper in an action against a plan administrator in the district where the plaintiffs lived, worked, earned their ERISA benefits, and made contributions to the plan. *Id.* at 103. Further, in *Dittman v. Dyno Nobel, Inc.,* No. 97CV1724, 1998 WL 865603 (N.D.N.Y. Nov. 24, 1998), venue was proper where the administrator elected to administer the plan to participants who worked in the district, earned pension credit in the district, made contributions from the district, received payments in the district, and where the denial of the participants claims had an effect in the district. *Id.* at *5.

In the previous action, the Southern District found that, although stating that he lived in New York City at the time his complaint was filed, Garg made no "evidentiary proffer to indicate that [he] worked or lived in the Southern District during his employment at CSFB, that payments in connection with the CSFB Plan were sent to [that] District, that contributions were sent from [the] District, or that the Defendant's denial of the Plaintiff's claim had an effect [there]." *Garg,* at *2.

■ In the present action, it is uncertain whether the plaintiff's employer made all contributions or premium payments to the PFI Plan, or from what location those payments were made. However, the plaintiff alleges that he lived in Nassau County and worked from both the Credit Suisse offices in Manhattan and his home in Nassau County during the period in which Winterthur administered the PFI Plan. (Garg Affidavit at ¶ 2). In addition, the plaintiff states that his disability pension credits were earned while he was resident in Nassau County, (Garg Affidavit at ¶ 5), and that if he had received his disability benefits, they would have been received in Nassau County. Finally, Win-

terthur directed all correspondence regarding the plaintiff's pension benefits to his home in Nassau County. In viewing the evidence submitted by the plaintiff in support of venue in this district as true for the purposes of this motion, the Court finds that venue is appropriate in the Eastern District of New York.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction is denied; and it is further

**ORDERED,** that the defendant's motion pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue is denied, and it is further

**ORDERED,** that the defendant's motion pursuant to Fed.R.Civ.P. 12(b)(4) and (5) for improper service of process is denied, and it is further

**ORDERED,** that the plaintiff shall amend the summons and complaint to replace every occurrence of the name "Winterthur" with the name "Winterthur Life."

**SO ORDERED.**